## A98A2419. DAVENPORT v. NORTHEAST GEORGIA MEDICAL CENTER, INC.
### (515 SE2d 162)

BARNES, Judge.

James A. Davenport, M.D., sued Northeast Georgia Medical Center, Inc. ("Northeast Georgia") for money damages because his staff privileges were terminated by Northeast Georgia. Following discovery by the parties, the trial court granted Northeast Georgia's motion for summary judgment, finding the hospital was entitled to immunity from suit under 42 USC § 11111 (a) (1). Dr. Davenport appeals, asserting (1) the hospital is not entitled to immunity because he did not receive adequate notice of the reasons action was taken to revoke his privileges; (2) there is a question of fact as to whether his conduct adversely affected the health or welfare of patients; and (3) there is a genuine issue as to whether the hospital complied with the statutory prerequisites for immunity. Because we find Dr. Davenport did not receive adequate notice, we reverse.

In his complaint, Dr. Davenport asserts the hospital violated its by-laws and acted arbitrarily and capriciously when it revoked his staff privileges on March 12, 1996. Thus, the issue before us is whether the hospital is entitled to immunity under 42 USC § 11111 (a) for this alleged conduct.

The Health Care Quality Improvement Act of 1986 was enacted to improve the quality of medical care by restricting the ability of physicians to move from state to state "without disclosure or discovery of the physician's previous damaging or incompetent performance." 42 USC § 11101 (2). It creates a national reporting system which requires insurance companies to report medical malpractice payments, 42 USC § 11131, boards of medical examiners to report sanctions imposed against physicians, 42 USC § 11132, and hospitals to report adverse professional peer review information, 42 USC § 11133.

> To assure that hospitals and doctors cooperate with the system and engage in meaningful professional review, Congress found it essential to provide qualified immunity from damages actions for hospitals, doctors, and others who participate in the professional review process. See 42 U.S.C. § 11101; H.R.Rep. 903, at 6385.

*Imperial v. Suburban Hosp. Assn.*, 37 F3d 1026, 1028 (4th Cir. 1994). Thus, those who participate in professional review activities that meet the standards imposed by 42 USC § 11112 "shall not be liable in damages under any law of the United States or of any State (or political division thereof)" with respect to the professional review action. 42 USC § 11111 (a) (1).

42 USC § 11112 (a) provides:

> For purposes of the protection set forth in [section 11111 (a) of this title], a professional review action must be taken — (1) in the reasonable belief that the action was in furtherance of quality health care, (2) after a reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3). A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in [section 11111 (a) of this title] unless the presumption is rebutted by a preponderance of the evidence.

Section 11112 (b) of the Act provides that "[a] health care entity is deemed to have met the adequate notice and hearing requirement of subsection (a) (3) [of this section]" if certain conditions are met. However, "[a] professional review body's failure to meet the conditions described in this subsection shall not, in itself, constitute failure to meet the standards of subsection (a) (3) [of this section]." 42 USC § 11112 (b). As the Act's legislative history states:

> If other procedures are followed, but are not precisely of the character spelled out in subsection . . . (b), the test of "adequacy" may still be met under other prevailing law. The Committee is aware, for example, that some courts have already carefully spelled out different requirements for certain professional review activities or actions, such as procedures for decisions regarding applicants for clinical privileges at a hospital. In those situations, compliance with the applicable law should satisfy the "adequacy" requirement even where such activities or actions require different or fewer due process rights than the ones specified under subsection . . . (b). In any case, it is the Committee's intent that physicians receive fair and unbiased review to protect their reputations and medical practices.

H.R. Rep. 903, 99th Cong., 2nd Sess. 10 reprinted in 1986 U. S. Code Cong. & Admin. News 6393.

Dr. Davenport claims the hospital is not entitled to immunity because it did not comply with the notice requirement for immunity under § 11112 (a). The statutory presumption in favor of compliance

with the requirements for immunity creates a unique standard of review: "Might a reasonable jury, viewing the facts in the best light for [the plaintiff], conclude that he has shown, by a preponderance of the evidence, that the defendant['s] actions are outside the scope of § 11112(a)?" *Austin v. McNamara*, 979 F2d 728, 734 (5) (9th Cir. 1992). See also *Bryan v. James E. Holmes Regional Med. Center*, 33 F3d 1318 (11th Cir. 1994).

Viewed in this light, the record shows that the hospital's Governing Board decided to revoke Dr. Davenport's practice privileges on March 12, 1996. The Governing Board's decision states:

> In reaching this decision, this Board is very concerned with Dr. Davenport's continued inability to function within the structure of the hospital, failure to learn from previous experiences, continued problems with resolving interpersonal conflicts, and unprofessional conduct. This Board finds that maintaining and furthering the quality of care at Northeast Georgia Medical Center necessitates that Medical staff members possess an ability to work with and relate to others in a cooperative and professional manner, and that because of Dr. Davenport's inability to do so, revocation of his privileges is in the best interest of the overall quality of care at Northeast Georgia Medical Center.

The Board's written decision states no other basis for the revocation of Dr. Davenport's privileges.

Since this is the "professional review action" for which the hospital seeks immunity, we must determine whether Dr. Davenport has rebutted the presumption that the hospital complied with the requirement that this action "must be taken after . . . adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances. . . ." 42 USC § 11112 (a) (3). The hospital contends that letters sent to Dr. Davenport on February 22, 1995, and April 4, 1995, demonstrate adequate notice to Dr. Davenport of the reasons for the proposed action against him.

On February 22, 1995, the Executive Vice President of the hospital sent a letter to Dr. Davenport which advised him that

> [t]he Medical Staff Executive Committee met on February 20, 1995 and reviewed the report of the Peer Review Committee with regards to the complaint which was filed by the Anesthesia Department. The Executive Committee referred the matter to the Peer Review Committee on January 19, 1995 with the direction that the Peer Review Committee

analyze the present situation, taking into account all previous incidents. The Peer Review Committee reviewed the series of complaints concerning your actions which dated back to November, 1992. A summary of these events is attached for your review. As you will recall, you were placed on probation for a period of one year beginning on September 22, 1993. At that time you were informed that any validated recurrences of problems with attitude, practice habits and relationships with nursing staff would result in suspension of your hospital privileges. . . . Following implementation of your probation, there were several additional concerns filed which resulted in the Executive Committee extending your probation through January 17, 1995. . . . Following review of the above actions, the Peer Review Committee concluded that you violated your probation. The Medical Staff Executive Committee voted on February 20, 1995 to suspend your medical staff membership due to the ongoing concerns dating back to 1992.

On April 4, 1995, the hospital's Executive Vice President sent another letter to Dr. Davenport which notified him that a hearing had been scheduled as a result of his request for a fair hearing under the by-laws governing the medical staff. The letter then states that the hearing was being held to review the Medical Staff Executive Committee's determination

that you violated the probation which was begun on September 22, 1993 and extended through January 17, 1995. At the time of your probation, you were informed that any validated recurrences of problems with attitude, practice habits and relationships with nursing staff would result in suspension of your hospital privileges. The Medical Staff voted to suspend your privileges due to ongoing concerns dating back to 1992.

The letter concludes by giving Dr. Davenport a list of 31 "potential witnesses" and a list of 24 "patients whose medical records may be referred to. . . ."

Based on our review of these letters, we find that a reasonable jury could conclude that Dr. Davenport has overcome, by a preponderance of the evidence, the presumption that the hospital provided him with adequate notice. Although a failure to comply with the procedures outlined in § 11112 (b) does not automatically require a finding that inadequate notice was provided, they do provide guidance on this issue. One of these requirements is that the physician be given a

written notice stating the reasons for the proposed action against him. 42 USC § 11112 (b) (1) (A) (ii).

In this case, the February 22, 1995 letter stated that "the Peer Review Committee concluded that you violated your probation." The April 4, 1995 letter stated that Dr. Davenport's hearing was being held to review the Medical Staff Executive Committee's determination that he violated his probation. But, the Governing Board's final decision on March 12, 1996, never states that Dr. Davenport's privileges were revoked because he violated his probation. Rather, it explains that Dr. Davenport's privileges were revoked as a result of his inability to work with and relate to others in a cooperative and professional manner. A reasonable jury could find that notifying Dr. Davenport that his privileges were being suspended due to "ongoing concerns dating back to 1992," and providing him with a laundry list of events, patient records and witnesses did not adequately notify Dr. Davenport of the reasons for the proposed action.

We reject the hospital's contention that Dr. Davenport's counsel stipulated that he received adequate notice during the June 5, 1995 hearing. Based on our review of the transcript, we find that Dr. Davenport's counsel merely stipulated that there was adequate notice that the hospital planned to use events dating back to 1992 during the hearing to establish that Dr. Davenport violated his probation, not that the hospital would use those events as an independent basis to revoke his privileges.

We also reject the hospital's contention that Dr. Davenport was provided with adequate notice because it granted him a continuance and allowed Dr. Davenport and his attorney to review his entire peer review file. Providing access to Dr. Davenport's 287-page peer review file without specifying the reasons for the proposed action against him created an impossible guessing game for Dr. Davenport and his attorney.

Dr. Davenport met his burden in rebutting the presumption in favor of the hospital because a reasonable jury could conclude the hospital did not provide Dr. Davenport with adequate notice or other procedures which were fair under the circumstances. As a result, the trial court erred when it granted summary judgment to the hospital based on its conclusion that the hospital was entitled to immunity under 42 USC § 11111 (a).

*Judgment reversed. Johnson, C. J., and Ruffin, J., concur. Smith, J., recused.*

DECIDED MARCH 3, 1999 —
RECONSIDERATION DENIED MARCH 29, 1999 —

*John M. Brown*, for appellant.
*Whelchel & Dunlap, Thomas M. Cole*, for appellee.