### A98A2361. SOUTH FULTON MEDICAL CENTER et al. v. JAYA PRAKASH.
(514 SE2d 233)

SMITH, Judge.

In this case, South Fulton Medical Center initiated peer review of the actions of Dr. Bangaru Jaya Prakash, a gastroenterologist, with regard to Jaya Prakash's failure to arrive at the hospital emergency room for almost two and one-half hours after agreeing to see a critically ill patient in consultation. Two hospital committees recommended suspending Jaya Prakash's admitting privileges for 28 days, but an appeal, as provided for in the hospital bylaws, to a body known as the "Ad Hoc Committee" resulted in reversal and no loss of privileges. Notwithstanding his exoneration, Jaya Prakash brought

suit against South Fulton Medical Center and various members of its medical staff (collectively "South Fulton"), alleging that he had been damaged by the peer review process. The defendants' motion for summary judgment was denied by the trial court, and we granted South Fulton's application for interlocutory appeal. Because we agree with South Fulton that it was entitled to immunity under the provisions of the Health Care Quality Improvement Act ("the Act"), 42 USC §§ 11101-11152, we reverse the denial of summary judgment.

The Act was designed "to facilitate the frank exchange of information among professionals conducting peer review inquiries without the fear of reprisals in civil lawsuits." (Footnote omitted.) *Bryan v. James E. Holmes Regional Med. Center*, 33 F3d 1318, 1322 (11th Cir. 1994). Under its provisions, professional review bodies and the individuals comprising them are insulated from damage actions for their activities under both federal and state law if their activities meet certain standards set forth in the Act. 42 USC § 11111 (a) (1). The professional review actions must have been taken "(1) in the reasonable belief that the action was in the furtherance of quality health care, (2) after a reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3). A professional review action shall be presumed to have met the preceding standards necessary for [immunity] unless the presumption is rebutted by a preponderance of the evidence." 42 USC § 11112 (a). This rebuttable presumption sets up "a somewhat unusual standard" for summary judgment. *Austin v. McNamara*, 979 F2d 728, 734 (5) (9th Cir. 1992). See also *Davenport v. Northeast Ga. Med. Center*, 237 Ga. App. 252, 254 (515 SE2d 162) (1999). The trial court is required to determine, viewing the facts in the light most favorable to the plaintiff, whether a reasonable jury could conclude that the plaintiff has shown by a preponderance of the evidence that the peer review activities did not meet the standards set forth in the Act. Id.

1. The trial court concluded that Jaya Prakash had "provided sufficient evidence to permit a jury to find that he had overcome, by a preponderance of the evidence, the presumption that the hospital's disciplinary action was taken in the reasonable belief that it would further quality patient care." South Fulton contends this finding was in error. We agree.

The incident giving rise to the professional review activities involved a patient who presented at the emergency room at South Fulton in critical condition. He was suffering from cirrhosis of the

liver and was vomiting copious amounts of blood. The attending emergency room physician took steps to stabilize the patient, but the patient required hospital admission and did not have a personal physician on the staff of the hospital. The hospital does not permit emergency room doctors to admit patients. The task of the emergency room doctor therefore, beyond stabilizing the patient, is to use the resources at his disposal to call in those who can admit and treat the patient properly.

The emergency room physician, Dr. Ronald Weed, testified on his deposition that he telephoned the physician designated as the medical backup for that day for internal medicine. When that doctor returned the call, she requested that Jaya Prakash's partner be called, which was done, but Jaya Prakash answered that call.[1] Weed first spoke with Jaya Prakash at 6:00 p.m. He testified that Jaya Prakash indicated he could not admit the patient, but that he would come in to see the patient in consult. Weed then called back the medical backup doctor, who asked him to call another doctor to arrange for admission. When Weed made the call, he apprised the doctor of the patient's condition. This doctor said he would come in, but he was at a meeting at another hospital, as was Jaya Prakash, and he would see the patient in about an hour's time. Although Weed believed the patient could not wait one hour, he made no further attempts to call another doctor. He testified that even though he had been told the two doctors were at a meeting, because he had communicated the patient's dire condition, he "anticipated that they would arrive shortly." That did not happen. Jaya Prakash appeared after the arrival of the other doctor and after that doctor had arranged the patient's admission. Prakash arrived two and one-half hours after telling Weed he would come in to see the patient. He treated the patient vigorously after his arrival and remained at the hospital until 2:00 a.m. Despite Jaya Prakash's best efforts, the patient died.[2]

The crux of Jaya Prakash's claim is that the hospital and the individual doctors on the peer review committees could not have had a reasonable belief that their review would further quality health care, and that because they were motivated by their own economic competition with him, they pursued peer review activities in bad faith. His claim focuses on the fact that at the time of this incident he had only "courtesy staff" privileges at South Fulton, which under hospital bylaws limited his hospital admissions to two per year. He could not admit any more patients because he had already reached

---

[1] Jaya Prakash's partner was Dr. Hari Piyasena. Jaya Prakash answered the call "on behalf of Dr. Piyasena."

[2] Jaya Prakash's care of the patient after arriving is not questioned, and no party suggests that the patient would have survived had Jaya Prakash arrived earlier.

his limit. He could not treat the patient until the patient had been "admitted." And once the patient was admitted, he began treatment within a reasonable time. Jaya Prakash relies upon *Islami v. Covenant Med. Center*, 822 FSupp. 1361 (N.D. Iowa 1992), to support his contention that the peer review action violated the hospital's own bylaws and thus could not have met the standard set forth in the Act.

Jaya Prakash's reliance upon *Islami* is misplaced. In that case, the hospital violated provisions in its bylaws regarding the *peer review process* by failing to give the doctor the notice and hearing procedures outlined in the bylaws. Id. at 1377. The federal district court held that under those circumstances, summary judgment was improper on the issue of immunity, the doctor having presented sufficient evidence to create a fact question as to whether a reasonable jury could find that the hospital was entitled to the benefit of the presumption that the requirements of the Act were met.

No such evidence was presented here. The hospital bylaws are relevant in this case only on the question of whether Jaya Prakash had the right to admit the patient in question. That question is irrelevant to the issue addressed by the peer review process in this case. Weed testified that he was dealing with a critically ill patient who was not improving with time. Weed felt that "if he deteriorated any more it would be to death." His testimony was that "admitting" the patient is merely a paper procedure, but that often the "consultant" is the doctor who treats the patient. And Jaya Prakash himself admitted that "probably" he could have left his meeting and seen the patient even "before the admitting physician arrived."

The United States circuit courts interpreting the Act have applied an objective standard in determining whether a peer review activity met the "reasonableness" standard in 42 USC § 11112 (a). *Wayne v. Genesis Med. Center*, 140 F3d 1145, 1148 (8th Cir. 1998); see *Austin*, supra at 734. Applying an objective standard, we find it is "reasonable" for a hospital to believe that addressing the delay in treatment of a critically ill patient would further quality health care. Certainly, if some conflict or confusion exists in the provision in the bylaws governing patient responsibility in a case such as this, then that, too, is a proper subject for peer review action. In our view, therefore, Jaya Prakash has not presented sufficient evidence to permit a reasonable jury to find that he has overcome, by a preponderance of evidence, the presumption that a hospital and doctors in South Fulton's position would reasonably have believed their action was warranted by the facts.

We note as well Jaya Prakash's contention that certain doctors on the initial investigative committees were in economic competition with him. This fact is insufficient to rebut the presumption of fairness. The Act prohibits physicians in direct competition with the doc-

tor whose actions are being reviewed only from serving as *hearing officers* or as members of a hearing panel. 42 USC § 11112 (b) (3) (A) (ii) & (iii). " '[I]t imposes no such requirement on participants in other phases of the peer review process.' " *Mathews v. Lancaster Gen. Hosp.*, 87 F3d 624, 636 (3rd Cir. 1996). Moreover, Jaya Prakash has presented no evidence that anticompetitive considerations entered into the process; he merely states that several doctors on the committees were in competition with him. As in *Mathews*, this showing is insufficient to rebut the presumption. Id. "Peer" review, by its very definition, would almost always raise such concerns about competitors. If, as we have found, using an objective standard, the evidence supports the conclusion that South Fulton was motivated by a legitimate concern for quality health care, any other motivation is irrelevant. *Bryan*, supra at 1335 (III) (C) (1). Because South Fulton was entitled to immunity under the Act, the trial court erred in denying its motion for summary judgment.

2. Given our determination in Division 1, we need not consider South Fulton's contention that it was entitled to summary judgment because Jaya Prakash never lost privileges and never suffered economic loss.

*Judgment reversed. Johnson, C. J., and Barnes, J., concur.*

DECIDED MARCH 10, 1999 —
RECONSIDERATION DENIED MARCH 31, 1999.

*Hall, Booth, Smith & Slover, Rush S. Smith, Jr., Phillip E. Friduss,* for appellants.

*Shaw & Evans, Howard R. Evans,* for appellee.