A02A1054. PATRICK v. FLOYD MEDICAL CENTER et al.
(565 SE2d 491)

ELDRIDGE, Judge.

The bylaws of appellee-defendant Floyd Medical Center ("Hospital") conferred authority to govern the Hospital upon appellee-defendant Hospital Authority of Floyd County ("Hospital Authority"). Likewise under the bylaws, the Hospital Authority delegated its governance responsibility to appellee-defendant Floyd HealthCare Management, Inc. ("Floyd Healthcare").

The Hospital's bylaws further established procedures by which any doctor might apply for staff privileges at the Hospital. These required applicant doctors to make application in writing; to provide necessary supporting information; and to participate in a peer review process triggered by the submission of the doctor's application. Peer review required that applicants be appraised by the department in which staff privileges were sought; that such appraisals be reported to the Hospital's Executive Committee; and that the Executive Committee make a further recommendation to Floyd Healthcare in its capacity as the Hospital's governing body. In the event of a recommendation to deny staff privileges, Floyd Healthcare's management agreement with the Hospital required that its Chief Executive

---

Officer give the applicant doctor notice thereof together with notice of the right to a due process hearing before a panel of five physicians as to such proposed action. Finally, the Hospital's bylaws afforded applicants a right of appeal from an adverse decision of the panel to Floyd Healthcare's board of directors.

In May 1995, appellant-plaintiff Ronald D. Patrick, M.D., submitted his written application to practice general surgery at the Hospital. Under Hospital bylaws, Dr. Patrick was granted temporary staff privileges subject to the peer review process. Dr. Patrick submitted to a 100 percent review of his medical charts and case files over a period of approximately six months by the Surgery Quality Assurance Committee ("SQAC") of the Hospital's Department of Surgery.

On May 15, 1996, after conducting an internal chart review of the records of 101 of Dr. Patrick's patients and considering the findings as to seven of the files made by an independent peer review firm assisted by a board-certified surgeon, the Greeley Company, the SQAC voted to recommend that Dr. Patrick's application for staff privileges be denied. The SQAC forwarded its recommendation to the Department of Surgery on May 21, 1996. After voting to accept the SQAC's recommendation, the Department of Surgery transmitted its recommendation to such effect to the Executive Committee. The Executive Committee adopted the recommendation of the Department of Surgery. On July 11, 1996, duly given notice of the adverse action proposed by the Executive Committee, Dr. Patrick requested a due process hearing thereon. Following the hearing, the Hearing Panel concurred in the findings of the Executive Committee and further recommended that Dr. Patrick's application for staff privileges be denied. On this, Dr. Patrick sought appellate review of the Hearing Panel's decision before Floyd Healthcare's board of directors.

Upon the board's denial of his application for staff membership, Dr. Patrick filed suit in the United States District Court for the Northern District of Georgia. Finding Dr. Patrick's complaint failed to state a cause of action for relief under 42 USC § 1983, the district court granted summary judgment to the Hospital, declined to exercise its supplemental jurisdiction over Dr. Patrick's state action claims, and dismissed them without prejudice. Thereafter, Dr. Patrick sued the Hospital in the Superior Court of Floyd County seeking damages, punitive damages, and bad faith litigation costs under OCGA § 13-6-11, alleging violations of OCGA § 31-7-7,[1] the Hospital's bylaws, and the Health Care Quality Improvement Act (the "Act"), 42 USC § 11101 et seq. (Count 1); tortious interference with business

---

[1] In general, OCGA § 31-7-7 establishes time constraints and procedures to ensure timely, nondiscriminatory action upon doctor applications for staff privileges by public hospitals.

relationships (Count 2); defamation (Count 3); violations of the Uniform Deceptive Trade Practices Act (Count 4); and intentional infliction of emotional distress (Count 5). This appeal follows the superior court's grant of partial summary judgment for the Hospital as to Counts 1 and 2 upon the finding that the Hospital was entitled to immunity under the Act and Georgia law. See 42 USC § 11111 (a) (1); OCGA § 31-7-132.

Dr. Patrick appeals, contending that the grant of summary judgment was error: (1) as based upon the ten-volume transcript of the proceedings before the Hearing Panel, a transcript filed "[w]ithout affidavit or other authentication" and containing inadmissible evidence; (2) as shielding the Hospital from the equitable claims of Count 1 of his complaint under the Act, a statute limited to providing immunity from monetary damages; (3) as predicated upon the finding that the peer review process in issue met the prerequisites for immunity under the Act and OCGA §§ 31-7-132 and 31-7-141. Finding Dr. Patrick's claims of error to be without merit, we affirm. *Held*:

1. A certified copy of a court transcript is one of the items a trial court is authorized to examine on motion for summary judgment to determine if there exists a genuine issue of material fact to be tried. *Abalene Pest Control Svc. v. Orkin Exterminating Co.*, 196 Ga. App. 463, 465 (3) (395 SE2d 867) (1990). There is no reason why it should be otherwise as to other legal proceedings where, as here, there is a certified legal transcript.

> While evidence on motion for summary judgment may typically be by affidavit, that is not the exclusive method for presenting sworn testimony. Nor is the accessibility of a witness to testify . . . a concern on motion for summary judgment where by statute none of the evidence needs to be established by live testimony. See OCGA § 9-11-56 (c), (e), (f).

(Citation omitted.) Id. at 466 (3). Moreover, even should such transcript include inadmissible evidence as Dr. Patrick argues, the presumption of regularity requires that we assume trial court rulings to be supported by competent evidence of record, absent evidence to the contrary. *Mullins v. Columbia County*, 202 Ga. App. 148, 150 (413 SE2d 489) (1991). Dr. Patrick points to no consideration of such evidence. We find none. Quite to the contrary, by its order granting the Hospital partial summary judgment, the superior court noted the applicability of the rules of evidence on summary judgment, see *Wheat v. Montgomery*, 130 Ga. App. 202, 204 (5) (202 SE2d 664) (1973) (rules as to admissibility of evidence applicable on motion for summary judgment), expressly stating that it did not consider cer-

tain of the affidavits submitted in opposition to summary judgment insofar as these contained hearsay and conclusory statements indicating bias motivating the peer review process. Under these circumstances, we conclude that this claim of error is without merit.

2. Dr. Patrick correctly argues that the immunity afforded by the Act is limited to monetary damages and does not extend to equitable relief, *Chalal v. Northwest Med. Center*, 147 FSupp.2d 1160, 1184 (VIII) (N.D. Ala. 2000); *Imperial v. Suburban Hosp. Assn.*, 37 F3d 1026, 1031 (4th Cir. 1994); *Manion v. Evans*, 986 F2d 1036, 1040-1041 (6th Cir. 1993); *Decker v. IHC Hosps.*, 982 F2d 433, 436 (10th Cir. 1992), cert. denied, *IHC Hosps. v. Decker*, 509 U. S. 924 (113 SC 3041, 125 LE2d 727) (1993). However, although Count 1 of Dr. Patrick's complaint, in effect, seeks injunctive relief in the nature of reinstatement of staff privileges, nothing of record shows that he moved the superior court for an injunction or otherwise pursued injunctive relief as surviving his claim for monetary damages. Under these circumstances, to the extent that Count 1 sought equitable relief in the nature of an injunction requiring the reinstatement of Dr. Patrick's staff privileges, it was abandoned. Id.; *Imperial v. Suburban Hosp. Assn.*, supra at 1031. While the superior court granted the Hospital summary judgment as to Count 1 of Dr. Patrick's complaint upon immunity afforded by the Act alone, "[a] grant of summary judgment must be affirmed if it is right for any reason." (Citation and punctuation omitted.) *Costrini v. Hansen Architects*, 247 Ga. App. 136, 138 (1) (543 SE2d 760) (2000). Accordingly, we conclude this claim of error to be without merit.

3. By his third and fourth enumerations of error, Dr. Patrick contends that the superior court erred in granting the Hospital summary judgment in that jury questions exist as to the Hospital's entitlement to immunity in the peer review process under 42 USC § 11112 (a) (1) through (4) of the Act and OCGA §§ 31-7-132 and 31-7-141. We disagree.

(a) *Hospital immunity under the Act*. To ensure meaningful compliance with the professional review system established by the Act,[2]

---

[2] Congress passed the Act in 1986 for the purpose of improving the quality of medical care

by restricting the ability of physicians who have been found to be incompetent from repeating this malpractice by moving from state to state without discovery of such finding. See 42 USC § 11101; H.R. Rep. No. 903, 99th Cong. 2d Sess. (1986), reprinted in 1986 USCCAN 6384-6391. Toward this end, the Act establishes a national reporting system "to follow bad doctors from place to place," id. at 6385, and provides immunity from damages for persons participating in professional review activities. Under the national reporting system, insurance companies are required to report medical malpractice payments to the Secretary of Health and Human Services, 42 USC § 11131; boards of medical examiners are required to report sanctions imposed against physicians, 42 USC § 11132; and health care enti-

"Congress found it essential to provide qualified immunity from damages actions for hospitals, doctors, and others who participate [therein]. See 42 USC § 11101; H.R. Rep. 903, at 6385." *Imperial v. Suburban Hosp. Assn.*, supra at 1028 (I). As relevant, entitlement to immunity under the Act is conditioned as follows:

> For purposes of the protection set forth in [42 USC § 11111 (a)],[3] a professional review action must be taken — (1) in the reasonable belief that the action was in the furtherance of quality health care, (2) after a reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 USC § 11112 (a).

On appeal from the grant of summary judgment, our charge is to ascertain whether the trial court properly determined that the movant established the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. OCGA § 9-11-56 (c); *Davenport v. Northeast Ga. Med. Center*, 247 Ga. App. 179, 180 (542 SE2d 525) (2000). Because there is a rebuttable presumption of immunity under the Act, the "burden of proof on summary judgment [shifts] *to the physician* to show that the professional review action failed to meet the due process and fairness requirements set forth in 42 USC § 11112 (a). *Bryan* [*v. James E. Holmes Regional Med. Center*, 33 F3d 1318, 1332, n. 25 (11th Cir. 1994)]." (Emphasis in original.) *Chalal v. Northwest Med. Center*, supra at 1171-1172 (II).

> Specifically as to the [Act], we determine whether "a reasonable jury, viewing the facts in the light best for [Dr. Patrick],

---

ties are required to report adverse professional review information, 42 USC § 11133. The Act also imposes a duty on hospitals to obtain information reported about any physician who applies for hospital privileges or employment, and to update such information every two years after hospital privileges are granted. 42 USC § 11135.

*Imperial v. Suburban Hosp. Assn.*, supra at 1028 (I); see also *South Fulton Med. Center v. Jaya Prakash*, 237 Ga. App. 396, 397 (514 SE2d 233) (1999), citing *Bryan v. James E. Holmes Regional Med. Center*, 33 F3d 1318, 1322 (11th Cir. 1994) (Act designed to prompt "frank" exchange of information between professionals in peer review proceedings by providing immunity from reprisal by civil lawsuit).

[3] Subject to meeting all standards set out by 42 USC § 11112 (a) of the Act, § 11111 (a) provides immunity from liability in damages to individuals and entities taking part in professional review actions.

might conclude that he has shown, by a preponderance of the evidence, that the [H]ospital's actions are outside the scope of § 11112 (a)." *Austin v. McNamara*, 979 F2d 728, 734 (9th Cir. 1992); *Bryan v. James E. Holmes Regional Med. Center*, [supra at 1332-1333 (III)].

(Punctuation omitted.) *Davenport v. Northeast Ga. Med. Center*, supra; *Chalal v. Northwest Med. Center*, supra at 1171-1172; *South Fulton Med. Center v. Jaya Prakash*, 237 Ga. App. 396, 397 (514 SE2d 233) (1999).

(i) First, Dr. Patrick argues the Hospital's professional review action was not taken in the reasonable belief that it was in furtherance of quality health care. We disagree. A professional review action is taken in the reasonable belief that it is in furtherance of quality health care if on the evidence then before them, the reviewers "would reasonably have concluded that their action would restrict incompetent behavior or would protect patients." (Citations and punctuation omitted.) *Bryan v. James E. Holmes Regional Med. Center*, supra at 1335 (III) (C) (1). "The Act does not require that the professional review result in an actual improvement of the quality of health care. Our focus is on the reasonableness of the peer reviewers' belief that they were furthering [the] quality [of] health care." (Citations and punctuation omitted.) *Davenport v. Northeast Ga. Med. Center*, supra at 185 (1) (a).

Pertinently, the record shows that the SQAC unanimously recommended that Dr. Patrick be denied staff privileges upon chart reviews of patient case files performed internally and externally by the Greeley Company, finding that Dr. Patrick had exhibited "clearly incorrect" clinical judgment in two cases, one ending in the death of a patient. As to the death case, the Greeley Company found, in particular, that the preoperative and intraoperative judgment exhibited by Dr. Patrick "[was] a major deviation from the accepted standard of practice for this condition." The recommendation of the SQAC was affirmed unanimously, in turn, by the Department of Surgery and the Executive Committee. Thereafter, the Hearing Panel convened at Dr. Patrick's request unanimously affirmed the recommendation of the Executive Committee, finding that it "[was] unable to be assured that any patient treated by Dr. Patrick in [the Hospital] will be given a high quality of medical care." Finally, Floyd Healthcare's board of directors was unanimous in denying Dr. Patrick's appeal from the Hearing Panel's decision.

While Dr. Patrick variously argues, as he did below, that the adverse action taken against him was motivated by bias rather than concern for patient care, he introduced no competent evidence that such bias was determinative of the peer review process. In any event,

claims of bias are irrelevant to the reasonableness standards of 42 USC § 11112 (a) of the Act. "[W]e [have] adopt[ed] an objective standard of reasonableness in this context." *Davenport v. Northeast Ga. Med. Center,* supra at 186 (2); *Bryan v. James E. Holmes Regional Med. Center,* supra at 1335; *South Fulton Med. Center v. Jaya Prakash,* supra at 399 (1). Accordingly, we conclude that Dr. Patrick failed to provide sufficient evidence to permit a jury to find by a preponderance of the evidence that he had overcome the presumption that the Hospital's action on his application for staff membership and privileges was based on a reasonable belief that it would further quality care for patients.

(ii) Second, the record shows that Floyd Healthcare's board of directors took its final action on Dr. Patrick's appeal from the decision of the Hearing Panel "after a reasonable effort to obtain the facts of the matter." 42 USC § 11112 (a) (2). In particular, the board acted to deny Dr. Patrick's application for medical staff membership upon the oral and written presentations of the parties to the board, as well as the ten-volume transcript and record of proceedings before the Hearing Panel. As indicated in Division 3 (a) (i) above, the board took its action denying Dr. Patrick's application for staff membership upon a substantial record at four levels, inclusive of review and analysis provided by an external peer review firm. Although Dr. Patrick argues that he was subjected to inordinate delay in the peer review process, he introduced no evidence showing that the Hospital's efforts to obtain the facts before denying his application for staff membership were unreasonable. To the contrary, the superior court aptly described the extensive record as reflecting a "careful look at the [care] rendered [Dr. Patrick's] patients by the peer review panel, and by an outside professional group, as well as several days of testimony on behalf of, and contrary to Dr. Patrick's position."

(iii) Third, Dr. Patrick's application for staff membership was denied only "after adequate notice and hearing procedures [were] afforded to [him] or after such other procedures as [were] fair to [him] under the circumstances." 42 USC § 11112 (a) (3). Section 11112 (b) sets forth the "safe harbor" conditions which health care entities must satisfy in this regard. Section 11112 (b) is as follows:

A health care entity is deemed to have met the adequate notice and hearing requirement of subsection (a) (3) [of this section] with respect to a physician if the following conditions are met (or are waived voluntarily by the physician):

(1) Notice of proposed action. The physician has been given notice stating — (A) (i) that a professional review action has been proposed to be taken against the physician, (ii) reasons for the proposed action, (B) (i) that the physician

has the right to request a hearing on the proposed action, (ii) any time limit (of not less than 30 days) within which to request such a hearing, and (C) a summary of the rights in the hearing under paragraph (3).

(2) Notice of hearing. If a hearing is requested on a timely basis under paragraph (1) (B), the physician involved must be given notice stating — (A) the place, time, and date, of the hearing, which date shall not be less than 30 days after the date of the notice, and (B) a list of the witnesses (if any) expected to testify at the hearing on behalf of the professional review body.

(3) Conduct of hearing and notice. If a hearing is requested on a timely basis under paragraph (1) (b) — (A) subject to subparagraph (B), the hearing shall be held (as determined by the health care entity) — (i) before an arbitrator mutually acceptable to the physician and the health care entity, (ii) before a hearing officer who is appointed by the entity and who is not in direct economic competition with the physician involved, or (iii) before a panel of individuals who are appointed by the entity and are not in direct economic competition with the physician involved; (B) the right to the hearing may be forfeited if the physician fails, without good cause, to appear; (C) in the hearing the physician has the right — (i) to representation by an attorney or other person of the physician's choice, (ii) to have a record made of the proceedings, copies of which may be obtained by the physician upon payment of any reasonable charges associated with the preparation thereof, (iii) to call, examine, and cross-examine witnesses, (iv) to present evidence determined to be relevant by the hearing officer, regardless of its admissibility in a court of law, and (v) to submit a written statement at the close of the hearing; and (D) upon completion of the hearing, the physician involved has the right — (i) to receive the written recommendation of the arbitrator, officer, or panel, including a statement of the basis for the recommendations, and (ii) to receive a written decision of the health care entity, including a statement of the basis for the decision.

*Chalal v. Northwest Med. Center*, supra at 1173-1174.

While Dr. Patrick asserts that the Hospital failed to follow applicable notice procedures, he does not support this aspect of the instant claim of error by reference to the record, citation of authority, or

argument, thus abandoning the same.[4] See Court of Appeals Rule 27 (c). Otherwise, Dr. Patrick challenges the fairness of the Hearing Panel for its refusal to hear his claims of bias and as composed of three doctors as in "economic competition with him or subject to influence by such competitors."

Physicians subject to peer review under the Act undeniably are afforded the right to a hearing before a panel of individuals not in direct economic competition with them, 42 USC § 11112 (b) (3) (A) (iii). However, inasmuch as Dr. Patrick stops short of the claim that the composition of his Hearing Panel was improper as including individuals in "direct" economic competition with him, he fails to state a claim of error in this regard. Even were the contrary true, Dr. Patrick concedes that the panel members complained of, although practicing doctors, were not surgeons. Consequently, the absence of direct economic competition is demonstrated on the face of the record, foreclosing possible error in any event. We interpret statutory language for its plain meaning so long as doing so does not result in the absurd or impractical. *McDaniel v. Elliott*, 269 Ga. 262, 264 (1) (497 SE2d 786) (1998). In light of the foregoing and our disposition of Division 3 (a) (i) as to Dr. Patrick's claims of bias, we conclude that no reasonable jury could conclude that the Hospital had failed to provide Dr. Patrick adequate procedures.

(iv) Fourth, there is no issue that the board denied Dr. Patrick's application for staff membership "in the reasonable belief that the action was warranted by the facts known." 42 USC § 11112 (a) (4). The record certainly shows that the board had a factual basis for its action. Dr. Patrick does not dispute that the incidents upon which he was denied staff membership occurred; at the close of his testimony before the Hearing Panel, he indicated that he had no problem with the hearing he had been given, having earlier conceded that a doctor's breach of the standard of care directly resulting in a patient's death could constitute a basis upon which a hospital might deny staff membership and privileges to an applicant doctor.

The [Act] grants broad discretion to hospitals with regard to staff privileges decisions, and our role on review of such

---

[4] Nonetheless, we find no issue as to the adequacy of notice. Dr. Patrick was given timely written notice of his right to a due process hearing before the Hearing Panel upon the Executive Committee's action recommending that he be denied staff privileges. The Hearing Panel was thereafter convened at his request. At the hearing, he received full rights of representation, cross-examination, and confrontation. Further given notice of his right to do so, Dr. Patrick submitted a written brief to Floyd Healthcare's board of directors, through counsel, for its consideration upon his appeal from the Hearing Panel's decision. Moreover, "the [Act] neither requires that the notice set forth reasons for the proposed action in a formal and precise manner nor mandates that the reasons be limited in number and scope or always be restated in the same terms." *Davenport v. Northeast Ga. Med. Center*, supra at 180.

actions is not to substitute our judgment for that of the hospital's governing board or to reweigh the evidence regarding the [grant,] renewal or termination of medical staff privileges. *Bryan* [*v. James E. Holmes Regional Med. Center,* supra at 1337 (III) (C) (4)].

(Punctuation omitted.) *Davenport v. Northeast Ga. Med. Center,* supra at 186 (1) (c). Again we find that no reasonable jury could conclude that Dr. Patrick, by a preponderance of the evidence, established that Floyd Healthcare's board of directors failed to act in the "reasonable belief that the [denial of staff privileges to Dr. Patrick] was warranted by the facts known after . . . reasonable effort to obtain [the] facts" under § 11112 (a) (4). 42 USC § 11112 (a) (4).

(b) *Hospital immunity under OCGA §§ 31-7-132 and 31-7-141.* Here we must address the question of preemption, noting that the Act and OCGA § 31-7-132 (a) are in conflict as to the relevance of evidence of bias in the peer review process. While evidence of bias is irrelevant to the question of reasonableness under 42 USC § 11112 (a) of the Act, *Austin v. McNamara,* supra; *Bryan v. James E. Holmes Regional Med. Center,* supra at 1335; *South Fulton Med. Center v. Jaya Prakash,* supra at 399 (1); *Davenport v. Northeast Ga. Med. Center,* supra at 186 (2), the reverse obtains under OCGA § 31-7-132 in that it provides immunity from civil liability *"unless* [the health care provider or employee thereof] was motivated by malice toward any person affected by such activity." (Emphasis supplied.) OCGA § 31-7-132 (a).

The Act, without exception, provides that its limitation on damages arising out of professional review actions shall apply to all professional review bodies meeting the reasonableness standards of 42 USC § 11112 (a), inclusive of state professional review actions commenced on or after October 14, 1989. 42 USC § 11111 (a), (c). In light of this, we conclude that to the extent that peer reviewer immunity under OCGA § 31-7-132 (a) is conditioned upon the absence of motivating malice, it is preempted by the Act. See *Lanier Collection Agency &c. v. Mackey,* 256 Ga. 499, 501 (3) (350 SE2d 439) (1986) (Georgia statute preempted by federal law unless the federal law provides an exception). Although the superior court granted summary judgment to the Hospital upon the finding that Georgia law in this regard to be in accord with federal law, we nonetheless affirm. See *Costrini v. Hansen Architects,* supra (summary judgment right for any reason must be affirmed). In light of the foregoing, the grant of summary judgment to the Hospital under OCGA § 31-7-132 was not error.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED APRIL 30, 2002 —
RECONSIDERATION DENIED MAY 20, 2002 — 

*Robert H. Hishon, James G. Killough*, for appellant.
*Smith, Shaw & Maddox, David F. Guldenschuh*, for appellees.