A03A0148. PATTON v. ST. FRANCIS HOSPITAL et al.
(581 SE2d 551)

ELLINGTON, Judge.

Following the termination of his clinical privileges at St. Francis Hospital, Dr. Robert M. Patton sued Dr. Fred M. Burdette and the hospital, seeking damages and injunctive relief. The trial court granted the motions for summary judgment filed by Burdette and the hospital after concluding that both were immune from Patton's claims under the federal Health Care Quality Improvement Act of 1986, 42 USC § 11101 et seq. (the "Act"), and under Georgia's peer review and medical review statutes, OCGA §§ 31-7-130 et seq. and 31-7-140 et seq. Patton appeals this ruling,[1] contending the trial court failed to apply the correct summary judgment standard and erred in concluding Burdette and the hospital were entitled to immunity from his claims. Finding no error, we affirm.

The facts were set out in *Patton v. St. Francis Hosp.*, 246 Ga. App. 4-5 (539 SE2d 526) (2000), as follows:

> Patton is a board-certified cardiologist, a sole practitioner, and was a member of the medical staff of St. Francis Hospital from 1975 to 1995. On December 19, 1995, the board of trustees of the hospital formally terminated Patton's clinical privileges. Termination was made at the recommendation of the Medical Staff Executive Committee ("MSEC"), which is responsible under medical staff bylaws for conducting peer

---

[1] This is the third appeal in this litigation. See *St. Francis Hosp. v. Patton*, 228 Ga. App. 544 (492 SE2d 303) (1997) (dismissing appeal of grant of summary judgment on nondispositive issue); *Patton v. St. Francis Hosp.*, 246 Ga. App. 4-5 (539 SE2d 526) (2000) (affirming denial of motion to compel production of peer review materials).

reviews of its staff. The recommendation by the MSEC was preceded by a yearlong peer review process. The review was initially requested, following the death of one of Patton's patients, by Dr. Fred M. Burdette, who is a board-certified cardiothoracic surgeon and was a member of the MSEC when he made the request. The peer review proceeding represented the fourth time the hospital had disciplined Patton because of patient care concerns. During the peer review process, several different committees convened, each of which gathered and reviewed information concerning the care and treatment given by Patton to the deceased patient. The stated purpose of this review was to evaluate and improve the quality of health care rendered at the hospital. Following a hearing during which Patton was represented by counsel and exercised his right to call, examine, and cross-examine witnesses and to present evidence on his own behalf, the MSEC Ad Hoc Committee issued a report recommending that Patton merely be reprimanded for failing to timely order a specific test on the patient who died. The report stated that the care rendered by Patton was not inappropriate, but also stated that Patton "should have considered and ordered a (specific test) early on in her care." The report questioned whether the test would have changed the outcome. Based on the conflicting language in the committee's report, the MSEC requested reconsideration of the committee's recommendation and added another physician to the committee. The committee then changed its recommendation and instead recommended that Patton's privileges be terminated. Based on the new recommendation, the MSEC voted to recommend termination of Dr. Patton's privileges. An appellate review committee appointed by the hospital board of trustees affirmed the decision of the MSEC, and the board of trustees made the final determination to terminate Patton's privileges.

In his complaint, Patton asserted claims for violations of the hospital bylaws, tortious interference with business relations, conspiracy, violation of the Uniform Deceptive Trade Practices Act, breach of confidential relationship, defamation, and deprivation of the right to practice his profession. All of Patton's claims arose from the actions taken by Burdette and the hospital during the yearlong peer review process leading to the termination of his clinical privileges at the hospital. The trial court denied Patton's motion to compel discovery of "copies of committee meeting minutes, committee reports, and information about who voted during what meetings, who was present at the meetings, and what was discussed during the various peer

review meetings." *Patton v. St. Francis Hosp.*, 246 Ga. App. at 5. After we affirmed the discovery order, the trial court granted the motions for summary judgment filed by Burdette and the hospital based on the immunity provided in the federal Act. See 42 USC § 11111 (a). The court cited Georgia's review statutes as an alternative basis for immunity. See OCGA §§ 31-7-132 (a); 31-7-141.

1. In three related enumerations of error, Patton contends the trial court erred in concluding Burdette and the hospital were entitled to immunity under the federal Act and Georgia's review statutes. In particular, Patton contends Burdette and the hospital should not be allowed to avail themselves of both the immunity provisions of the federal Act and the privilege provisions of Georgia's peer review and medical review statutes.[2] See OCGA §§ 31-7-133 (peer review records confidential); 31-7-143 (medical review committee proceedings and records immune from discovery or use as evidence in civil actions).

(a) We find that Patton's policy argument fails in the face of clear legislative intent to protect review proceedings from discovery while granting immunity from civil liability to review participants. The Georgia peer review and medical review statutes, which establish the privilege for "the proceedings and records" of peer review organizations and medical review committees, also provide for immunity to participants and witnesses in such proceedings. OCGA §§ 31-7-130 ("It is the intent of the General Assembly to provide protection for those individuals who are members of peer review groups which evaluate the quality and efficiency of professional health care providers and to protect the confidentiality of their records."); 31-7-132 (a) (immunity from liability for peer review); 31-7-133 (a); 31-7-141 (immunity for medical review committee members from claims for damages filed by health care providers); 31-7-143; *Baldwin County Hosp. Auth. v. Wright*, 202 Ga. App. 9 (413 SE2d 484) (1991) (peer review and medical review proceedings are both absolutely privileged).[3]

---

[2] We note that, despite the privilege, Patton had access to certain review materials, including the transcript of the Ad Hoc Hearing Committee which recommended that Patton be reprimanded for his failure to timely order a specific test and his failure to adequately document his analysis of the patient's condition. The Ad Hoc Hearing Committee also recommended that Patton's clinical privileges be restored.

[3] In the context of medical malpractice actions, the Supreme Court of Georgia recognized the intent of "the [Georgia] General Assembly [to place] an absolute embargo upon the discovery and use of all proceedings, records, findings and recommendations of peer review groups and medical review committees in civil litigation." *Emory Clinic v. Houston*, 258 Ga. 434-435 (1) (369 SE2d 913) (1988). Further, "[t]he purpose for the enactment of [OCGA § 31-7-143] is to foster the delivery of quality medical services by preserving the candor necessary for the effective functioning of hospital medical review committees. . . . It embraces the goal of medical staff candor at the cost of impairing [litigants'] access to evidence." (Citations and punctuation omitted.) *Hollowell v. Jove*, 247 Ga. 678, 680 (279 SE2d 430) (1981).

(b) Patton contends the trial court failed to construe the evidence in the light most favorable to him as the party opposing summary judgment, in violation of the proper standard on summary judgment. See OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) (to prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law). We disagree.

In setting out the summary judgment standard to be applied in this case, the trial court cited *South Fulton Med. Center v. Jaya Prakash*, 237 Ga. App. 396, 397 (514 SE2d 233) (1999). In that case, we held "[t]he trial court is required to determine, *viewing the facts in the light most favorable to the plaintiff*, whether a reasonable jury could conclude that the plaintiff has shown by a preponderance of the evidence that the peer review activities did not meet the standards set forth in the Act." (Citation omitted; emphasis supplied.) Id. By citing that case, the trial court demonstrated its awareness of the proper standard.

Further, although the trial court discussed the impact of certain presumptions arising from the Act, we find no indication in the trial court's order that it failed to view the facts in the light most favorable to Patton. Accordingly, this enumeration is without merit.

(c) Having determined the trial court viewed the facts in the proper light, we now consider whether Burdette and the hospital were entitled to summary judgment.

*The Health Care Quality Improvement Act.* Perceiving a need for effective medical peer review, the United States Congress adopted the Act to protect physicians who engage in professional peer review from the threat of private money damage liability arising from their participation in such review processes. 42 USC § 11101. The Act provides that any person who engages in a professional review action "shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the action," provided that certain conditions are met. 42 USC § 11111 (a) (1) (D). Those requisite conditions are that the professional review action be taken

(1) in the reasonable belief that the action was in the furtherance of quality health care, (2) after a reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and (4) in the reasonable belief that the action was warranted by the facts known

after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 USC § 11112 (a). "The legislative history of § 11112 (a) indicates that its reasonableness requirements were intended to create an objective standard, rather than a subjective good faith standard." *Austin v. McNamara*, 979 F2d 728, 734 (1) (9th Cir. 1992). The plaintiff bears the burden of proving the peer review process was not reasonable as a matter of law. *Patrick v. Floyd Med. Center*, 255 Ga. App. 435, 439 (3) (a) (565 SE2d 491) (2002); *Bryan v. James E. Holmes Regional Med. Center*, 33 F3d 1318, 1333 (III) (A) (11th Cir. 1994).

Under the Act, a professional review action shall be presumed to have met the requisite conditions for immunity "unless the presumption is rebutted by a preponderance of the evidence." 42 USC § 11112 (a) (4).

This rebuttable presumption sets up "a somewhat unusual standard" for summary judgment. The trial court is required to determine, viewing the facts in the light most favorable to the plaintiff, whether a reasonable jury could conclude that the plaintiff has shown by a preponderance of the evidence that the peer review activities did not meet the standards set forth in the Act.

(Citation omitted.) *South Fulton Med. Center v. Jaya Prakash*, 237 Ga. App. at 397. See also *Davenport v. Northeast Ga. Med. Center*, 247 Ga. App. 179, 185 (1) (c) (542 SE2d 525) (2000); *Austin v. McNamara*, 979 F2d at 734 (1).

(i) As to the first factor, we find Patton failed to provide sufficient evidence to permit a jury to find that he has overcome, by a preponderance of the evidence, the presumption that the hospital terminated Patton's clinical privileges "in the reasonable belief that the action was in the furtherance of quality health care." 42 USC § 11112 (a) (1). "A professional review action is taken in the reasonable belief that it is in furtherance of quality health care if on the evidence then before them, the reviewers would reasonably have concluded that their action would restrict incompetent behavior or would protect patients." (Citation and punctuation omitted.) *Patrick v. Floyd Med. Center*, 255 Ga. App. at 440 (3) (a) (i). The entity responsible for peer review, the MSEC, determined, after detailed investigation, that a critically ill patient died after Patton provided less than the standard of care for the patient. Under these circumstances, the committee's belief that peer review action would further quality health care is objectively reasonable. Id.; *South Fulton Med. Center v. Jaya Prakash*, 237 Ga. App. at 399 (1).

(ii) As to the second factor, we find Patton failed to provide sufficient evidence to permit a jury to find that he has overcome, by a preponderance of the evidence, the presumption that the hospital terminated Patton's clinical privileges only "after a reasonable effort to obtain the facts of the matter." 42 USC § 11112 (a) (2). "[T]he determinative inquiry on this issue is whether or not the totality of the process leading up to the board's decision evidenced a reasonable effort to obtain the facts of the matter." (Citation omitted.) *Davenport v. Northeast Ga. Med. Center*, 247 Ga. App. at 185 (1) (b). In this case, five different panels reviewed the patient death at issue over the course of a year.[4] The investigation included an 11-hour hearing at which counsel represented Patton and called and cross-examined witnesses and presented evidence. We find the hospital's efforts to obtain the facts of the matter were objectively reasonable. *Patrick v. Floyd Med. Center*, 255 Ga. App. at 441 (3) (a) (ii); *Davenport v. Northeast Ga. Med. Center*, 247 Ga. App. at 185-186 (1) (b).

(iii) As to the third factor, we find Patton failed to provide sufficient evidence to permit a jury to find that he has overcome, by a preponderance of the evidence, the presumption that the hospital terminated Patton's clinical privileges "after adequate notice and hearing procedures [were] afforded to [Patton]." 42 USC § 11112 (a) (3), (b). The record establishes that Patton received notice of each of the levels of review detailed above. Further, Patton was invited to meet with or appear before most of the review panels, including the MSEC hearing subcommittee. Patton received the benefit of objectively adequate notice and hearing procedures. *Patrick v. Floyd Med. Center*, 255 Ga. App. at 441-443 (3) (a) (iii).

(iv) As to the fourth factor, we find Patton failed to provide sufficient evidence to permit a jury to find that he has overcome, by a preponderance of the evidence, the presumption that the hospital would reasonably have believed that its action was warranted by the facts. The federal Act "grants broad discretion to hospitals with regard to staff privileges decisions, and our role on review of such actions is not

---

[4] An investigative committee of the Department of Medicine reviewed the case first. After interviewing Patton, the committee found fault with Patton's failure to timely order an echocardiogram to rule out prosthetic mitral valve failure. The MSEC appointed a study committee, which ultimately recommended that Patton's clinical privileges be revoked. The full MSEC then met with Patton, after which the MSEC recommended to the hospital's governing body that Patton's clinical privileges be revoked. A hearing subcommittee of the MSEC conducted the 11-hour hearing. The hearing subcommittee recommended that Patton be reprimanded for his failure to timely order an echocardiogram and to document his diagnostic analysis, but it recommended that his clinical privileges be restored. The full MSEC rejected the recommendation of the hearing subcommittee and recommended that Patton's clinical privileges be revoked. An appellate review subcommittee of the Board of Trustees recommended the Board accept the MSEC's recommendation to revoke Patton's clinical privileges. Finally, the full Board of Trustees revoked Patton's clinical privileges.

to substitute our judgment for that of the hospital's governing board or to reweigh the evidence regarding the . . . termination of medical staff privileges." (Citation and punctuation omitted.) *Davenport v. Northeast Ga. Med. Center*, 247 Ga. App. at 186 (1) (c). In this case, the MSEC determined that Patton failed to properly assess a critically ill patient's condition. The hospital's belief that Patton's clinical privileges should be revoked was not objectively unreasonable. *Patrick v. Floyd Med. Center*, 255 Ga. App. at 443-444 (3) (a) (iv).

(d) As to Burdette's individual liability, we note that Burdette's participation in the review process was limited to requesting the peer review, to testifying at the hearing of the MSEC study subcommittee, and serving on the MSEC. Burdette's participation as a member of the peer review body is governed by the same immunity analysis as applies to the hospital. See Division 1 (c), supra.

As a witness during the peer review process, Burdette is entitled to immunity unless he knowingly provided false information. 42 USC § 11111 (a) (2). In arguing that Burdette knowingly provided false information during the peer review process, Patton focuses on two errors in Burdette's surgical report regarding the subject patient. The surgical report was completed as a routine part of Burdette's own treatment of the subject patient, completely apart from the peer review process. Furthermore, Burdette acknowledged the two errors during the hearing. Patton, therefore, failed to show that Burdette provided any false information during the peer review process.

We find Patton failed to provide sufficient evidence to permit a jury to find that he has overcome, by a preponderance of the evidence, the presumption that Burdette's participation in the review process was within the scope of the Act. *Patrick v. Floyd Med. Center*, 255 Ga. App. at 443-444 (3) (a); *Davenport v. Northeast Ga. Med. Center*, 247 Ga. App. at 180, 186 (1).

2. Patton contends the trial court erred in concluding that he failed to establish the "malice" exception to immunity under the Georgia peer review and medical review statutes. See OCGA §§ 31-7-132 (a) (peer reviewer immune "unless he was motivated by malice toward any person affected by such activity"); 31-7-141 (medical review committee member immune "if the committee member acts without malice or fraud"). As we have held, however, to the extent that peer review and medical review immunity under OCGA §§ 31-7-132 (a) and 31-7-141 are conditioned upon the absence of malice and deception, the statutes are preempted by the federal Act under which bias is irrelevant. 42 USC § 11111 (a); *Patrick v. Floyd Med. Center*, 255 Ga. App. at 444 (3) (b). See *Davenport v. Northeast Ga. Med. Center*, 247 Ga. App. at 186 (2) (under the Act, reviewers' good or bad faith irrelevant); *Austin v. McNamara*, 979 F2d at 734 (I) (A) (1) (under the Act's objective reasonableness test, state of mind of peer

review board or hearing participant is immaterial). See also 42 USC § 11115 (a) (Act does not preempt state laws to extent they provide greater protections for peer reviewers). There was no error.

*Judgment affirmed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 20, 2003 —
RECONSIDERATION DENIED MARCH 13, 2003 — 

*Chilivis, Cochran, Larkins & Bever, Anthony L. Cochran,* for appellant.

*Hawkins & Parnell, Alan F. Herman, Assunta F. Deevey, Love, Willingham, Peters, Gilleland & Monyak, Robert P. Monyak, Kimberly L. Woodland,* for appellees.