A08A1826. BURROWES v. NORTHSIDE HOSPITAL et al.

(671 SE2d 176)

JOHNSON, Presiding Judge.

Dr. Celio O. Burrowes, a bariatric surgeon, challenges Northside Hospital's peer review decision to suspend and revoke his medical staff privileges. The facts are not in dispute. Following the summary suspension of some of Burrowes' privileges in October 2003 and the summary suspension and recommendation for termination of all of his clinical privileges in January 2004, Burrowes sought and was given a hearing before Northside Hospital's Fair Hearing Commit-

tee. The Fair Hearing Committee held its hearing over 11 sessions, during which it reviewed extensive documents and heard testimony from Burrowes and his witnesses and from the Northside Hospital Medical Executive Committee and its witnesses. The Fair Hearing Committee also heard arguments of counsel. At the conclusion of the hearing, the Fair Hearing Committee issued a Report and Decision, which unanimously concluded that the Northside Hospital peer review action "was not arbitrary, unreasonable or capricious but was an appropriate corrective action to protect the welfare of patients at Northside Hospital."

Burrowes appealed this decision to an Appellate Review Committee at Northside Hospital. After argument from counsel and receiving further testimony and documents from Burrowes, the Appellate Review Committee unanimously supported the Fair Hearing Committee decision. On February 6, 2006, the Northside Board of Directors accepted the recommendation of the Appellate Review Committee, upholding the summary suspension of Burrowes' clinical privileges and terminating Burrowes' medical staff privileges at Northside Hospital. Burrowes then filed the present lawsuit.

Northside Hospital moved for summary judgment, contending it is immune from liability for monetary damages under the federal Health Care Quality Improvement Act[1] and from civil liability under Georgia's peer review statute.[2] The trial court granted Northside Hospital's motion for summary judgment, and Burrowes appeals. For reasons that follow, we affirm.

1. Burrowes contends the trial court erred in granting Northside Hospital's motion for summary judgment based upon federal immunity. We find no error.

Under the Health Care Quality Improvement Act, legal immunity from damages is afforded for peer review actions taken (1) in the reasonable belief that the action was in the furtherance of quality health care, (2) after a reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the proceeding requirement.[3] The peer review action shall be presumed to have met the requisite conditions for immunity unless the presumption is rebutted by a preponderance of the evidence.[4] The plaintiff bears the

---

[1] 42 USC § 11112 (a) et seq.
[2] OCGA § 31-7-132 (a).
[3] 42 USC § 11112 (a).
[4] 42 USC § 11112 (a) (4).

burden of proving the peer review process was not reasonable as a matter of law under an objective standard,[5] and a peer reviewer's state of mind or malicious motive is immaterial under the Act.[6]

Based on the record before us, the superior court properly found that Burrowes failed to rebut the presumption that the peer review process met the criteria of the Health Care Quality Improvement Act. According to the record, Northside Hospital's Chief of Surgery formed an ad hoc committee to look into Burrowes' medical skills and judgment after he was told by gastroenterologists and pulmonologists of their concerns about patient management by Burrowes and about complaints from Burrowes' patients. He was also told by two different anesthesiologists that Burrowes "seemed to have an inordinate number of complications." And he had a nurse's incident report about Burrowes' late notice to a patient's family that the patient had died.

While the peer review by the ad hoc committee was taking place, one of Burrowes' patients died, and Northside Hospital submitted the patient's medical records to an outside peer review organization for review. The reviewer, who was unaware of the identity of the surgeon under review, concluded that the patient's death was caused by Burrowes' error in surgical technique and in medical judgment, especially Burrowes' significant delay in diagnosing and treating an obvious complication after surgery. All these facts were used to support the peer review decision to suspend and revoke Borrowes' medical staff privileges at Northside Hospital, and these same facts were presented before the Fair Hearing Committee and the Appellate Review Committee.

Burrowes argues that the trial court erred in granting summary judgment to Northside Hospital and in giving deference to the decision of the Fair Hearing Committee because the charges against him were based upon erroneous findings. In support of this argument, Burrowes cites examples of evidence regarding the rates of GI leaks and mortality following bariatric surgery. According to Burrowes, the 0.3 percent rates for leaks and mortality presented at the hearing as the national rates and held as the standard are lower than the actual national rates of one to two percent. However, while Burrowes points to factual inaccuracies regarding leak and mortality rates in the peer review process, it is important to note that the Fair Hearing Committee specifically stated as follows:

> In light of all the evidence considered by the Hearing Committee, and the considerable time expended on this

[5] See *Patton v. St. Francis Hosp.*, 260 Ga. App. 202, 206 (1) (c) (581 SE2d 551) (2003).

[6] See *Taylor v. Kennestone Hosp.*, 266 Ga. App. 14, 19 (2) (596 SE2d 179) (2004).

peer review action, . . . the Hearing Committee desires to be clear that its decision was ultimately based upon its *overall concerns* from the *totality* of the evidence and *not* any individual issue.[7]

Burrowes also contends the trial court erred in granting summary judgment to Northside Hospital because Northside Hospital failed to take reasonable efforts to discover its own leak and mortality records. However, Burrowes has failed to prove this allegation. While Northside Hospital data regarding leak and mortality rates of bariatric patients was not discovered until after the Fair Hearing Committee and Appellate Review Committee completed their hearings and issued their rulings, there is no evidence that Northside Hospital failed to take reasonable efforts to discover data regarding these rates. Moreover, it is again important to note that the ad hoc committee, the Fair Hearing Committee, and the Appellate Review Committee based their findings and recommendations on more than just Burrowes' leak and mortality rates.

In addition to looking at leak and mortality rates, Northside Hospital's ad hoc committee, its Fair Hearing Committee, and its Appellate Review Committee expressly found that (1) the medical literature provided by Burrowes was unpersuasive, (2) Burrowes falsified his application for credentials, (3) Burrowes' credibility, particularly with regard to the scope of his personal involvement in one of his cases and his failure to disclose facts on his application, was "extremely troublesome," (4) Burrowes demonstrated poor surgical technique, poor judgment, and poor post-surgical management, (5) Burrowes endangered patients and cost at least one patient her life, (6) Burrowes' complication rates were unacceptably high, and (7) Burrowes either did not truly recognize problems with his care or truly accept responsibility; he simply tried to justify his actions. Both the Fair Hearing Committee and the Appellate Review Committee concluded that the summary suspension and recommendation for termination of privileges was not arbitrary, unreasonable or capricious but was an appropriate corrective action to protect the welfare of patients at Northside Hospital.

Based on the record as presented to us, we conclude that the trial court did not err in granting Northside Hospital's motion for summary judgment based on immunity under the federal Health Care Quality Improvement Act.

---

[7] (Emphasis in original.)

2. Burrowes contends the trial court erred in granting Northside Hospital's motion for summary judgment based upon state immunity. We again find no error.

Georgia's peer review statute provides that no professional health care provider "shall be held, by reason of the performance of peer review activities, . . . to be civilly liable under any law unless he was motivated by malice toward any person affected by such activity."[8] As under the Health Care Quality Improvement Act, Georgia law requires that the courts give great deference to a hospital's medical judgment regarding a physician's competency: when reviewing a hospital's revocation of a physician's clinical privileges, the court's role is not to substitute its judgment for that of the hospital's governing board or to re-weigh the evidence regarding the renewal or termination of medical staff privileges; rather, the court must defer to the hospital governing body regarding the doctor's medical skill and judgment.[9] However, under the Georgia statute, a peer reviewer's state of mind or malicious motive is material.

Burrowes argues that Northside Hospital is not entitled to immunity under the Georgia statute because it acted with malice and animus in prosecuting him. The appellate brief lists four examples of malice and animus: (1) the ad hoc committee was established solely upon the Chief of Surgery's recommendation after he received individual complaints, as opposed to complaints from a council or committee; (2) the ad hoc committee that made its recommendation against him was comprised of two physicians who were his economic competitors, two physicians who had never practiced bariatric surgery, and two other physicians; (3) the ad hoc committee selectively decided to only review Burrowes' cases for 2003 in an attempt to skew statistics; and (4) Northside Hospital failed to disclose hospital statistics regarding its own bariatric leak and mortality rates, even though that evidence was affirmatively requested by the ad hoc committee. We find that the record is devoid of any evidence that Northside Hospital acted with malice during the peer review process.

The Chief of Surgery had sufficient complaints to establish an ad hoc committee to look into Burrowes' actions. This committee was comprised of two bariatric surgeons to provide the committee with expertise, and Burrowes' claim that the surgeons were biased because they were competitors was rejected by the Fair Hearing Committee. Moreover, at the time the ad hoc committee investigated Burrowes, the Chief of Surgery was not aware of Northside Hospital data regarding leak and mortality rates of bariatric patients, and his

---

[8] OCGA § 31-7-132 (a).
[9] See *Univ. Health Svcs. v. Long*, 274 Ga. 829, 830 (561 SE2d 77) (2002).

decision to recommend suspension of Burrowes' medical staff privileges was not based simply on Burrowes' leak and mortality rates, or on his 2003 statistics.

Reviewing the record de novo and in the light most favorable to Burrowes, we can find no evidence from which a jury could reasonably infer that Northside Hospital's decision to revoke Burrowes' clinical privileges was motivated by malice. Deferring to the medical judgment of the hospital governing body regarding Burrowes' medical skill and judgment, as we must, we conclude that the trial court properly found that Northside Hospital was entitled to civil immunity from Burrowes' claims.[10]

3. Burrowes further argues that Northside Hospital should not be allowed to avail itself of the federal Act's immunity provisions and Georgia's privilege provisions because the peer review process was "contaminated" by the failure to disclose evidence, and the trial court abused its discretion in not considering this evidence. However, Burrowes does not mention the content of this newly discovered evidence in his appellate brief. We assume the newly discovered evidence consists of the national leak and mortality rates, as well as Northside Hospital's own leak and mortality rates. If this assumption is correct, then the trial court did consider the newly discovered evidence and ruled that the evidence was marginally relevant and that Burrowes had waived his right to rely on this evidence.

Moreover, even if the newly discovered documents from Northside Hospital were relevant, they justify Northside Hospital's decision to revoke Burrowes' clinical privileges because they show that Burrowes was the only Northside bariatric surgeon to encounter deaths of his patients after surgery during 2003. Leaks are not addressed in the documents. Burrowes has failed to overcome the presumption of reasonableness and has failed to show that Northside Hospital's peer review process was objectively unreasonable. The trial court did not err in granting Northside Hospital's motion for summary judgment based on immunity from liability under the federal Health Care Quality Improvement Act and Georgia's peer review statute.

*Judgment affirmed. Barnes, C. J., and Phipps, J., concur.*

DECIDED NOVEMBER 10, 2008.

*Charles A. Mathis, Jr.*, for appellant.

---

[10] See *Kennestone Hosp.*, supra at 22 (4) (a).

*McKenna, Long & Aldridge, James C. Rawls, Stephen D. Bauer,* for appellees.