**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 2, 2012**

# In the Court of Appeals of Georgia

A12A0160. DEKALB MEDICAL CENTER, INC. v. OBEKPA.        JE-008

ELLINGTON, Chief Judge.

DeKalb Medical Center, Inc. ("the hospital") appeals from an order of the Superior Court of DeKalb County that enjoined the hospital from reporting to the National Practitioner Data Bank ("the data bank") a final, adverse decision of the hospital's Board of Directors ("the board") to deny the application of Dr. Adah E. Obekpa for renewal of his clinical privileges while Obekpa's claims against the hospital remained pending. The hospital also appeals the court's order denying its motion to dismiss Obekpa's complaint for equitable relief, a complaint that seeks to set aside the board's final decision and to reinstate a previous recommendation of the hospital's hearing panel. For the following reasons, we reverse.

1. The hospital contends that the superior court erred in denying its motion to dismiss Obekpa's complaint, which was converted to a motion for summary judgment when the court took evidence outside the pleadings with the consent of the parties,[1] because the hospital is entitled to immunity pursuant to Georgia's peer review statue, OCGA § 31-7-132 (a). We agree.

Obekpa did not file a complaint for damages, which would have been governed by the federal Health Care Quality Immunity Act of 1986 ("HCQIA").[2] Rather, he

---

[1] OCGA § 9-11-12 (c) provides, in relevant part, that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Code Section 9-11-56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Code Section 9-11-56."

[2] 42 USC § 11101 et seq. Under the HCQIA, legal immunity from monetary damages is afforded for peer review actions taken "(1) in the reasonable belief that the action was in the furtherance of quality health care, (2) after a reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the [proceeding] requirement." 42 USC § 11112 (a); See 42 USC § 11111 (a) (1) (legal immunity from damages only). The peer review action shall be presumed to have met the requisite conditions for immunity unless the presumption is rebutted by a preponderance of the evidence. 42 USC § 11112 (a) (4). The plaintiff bears the burden under the HCQIA of proving the peer review process was not reasonable as a matter of law under an objective standard. *Patton v. St. Francis Hosp.*, 260 Ga. App. 202, 206 (1) (c) (581 SE2d 551) (2003). Further, a peer reviewer's state of mind or

sought equitable relief. In his complaint and the amendments thereto, Obekpa asked the superior court (1) to declare the final decision of the board void because it was motivated by malice and because the hospital failed to abide by the credentialing and corrective action policy of its medical staff bylaws, and (2) to enjoin the hospital from reporting its decision to deny his application for reappointment to the hospital staff to the data bank.[3]

Georgia's peer review immunity statute provides that no professional health care provider "shall be held, by reason of the performance of peer review activities, . . . to be civilly liable under any law unless [the provider] was motivated by malice toward any person affected by such activity." OCGA § 31-7-132 (a). Unlike the HCQIA, this Code section provides immunity from all civil liability, not just from monetary damages.[4] "Consequently, Georgia's peer review statute covers claims for

---

malicious motive is immaterial under the HCQIA. See *Taylor v. Kennestone Hosp., Inc.*, 266 Ga. App. 14, 19 (2) (596 SE2d 179) (2004).

[3]The HCQIA requires health care entities to report professional review actions concerning physicians that adversely affect the clinical privileges of a physician for a period longer than 30 days to the data bank. 42 USC §§ 11133 (a) (1).

[4] Federal law does not completely preempt OCGA § 31-7-132 (a). The HCQIA only preempts that Code section to the extent they conflict. *Patrick v. Floyd Med. Ctr.*, 255 Ga. App. 435, 438 (2) (565 SE2d 491) (2002). Because the HCQIA does not provide immunity against claims for equitable relief, "we cannot say that it is in

3

equitable relief." *Taylor v. Kennestone Hosp., Inc.*, 266 Ga. App. at 21-22 (4) (a). We review the superior court's decision de novo and in the light most favorable to Obekpa. Id. So viewed, the record reveals the following undisputed facts.

Obekpa was appointed to the hospital staff in September 2008, with clinical privileges in internal medicine. A few weeks after his appointment, the hospital personnel began noticing that Obekpa was not properly documenting the treatment of his patients. The hospital's Chief of the Department of Medicine spoke with Obekpa and expressed his concerns. Documentation problems persisted, however, and, over the next five months, the hospital received complaints that Obekpa was not appropriately attentive to or responsive to his patients and that he was not properly using hospital resources. These initial complaints prompted efforts by the medical staff to engage Obekpa in "collegial intervention." Obekpa was informed that the hospital would be monitoring him by reviewing his progress notes and assessing the level of patient and staff complaints.

conflict with this aspect of OCGA § 31-7-132 (a)." *Taylor v. Kennestone Hosp., Inc.*, 266 Ga. App. at 21 (4) (a), fn. 4.

4

Despite these informal efforts, Obekpa's professional conduct remained unchanged. On May 8, Obekpa was informed that "the medical staff ha[d] reached the point of making a decision on initiating an investigation[.]" He was advised of the peer review and investigation process, the bylaws, and the fact that he could resign, if he chose, prior to an investigation being initiated and that, if he did so, no report would be made to the data bank. On July 7, the hospital's Medical Executive Committee ("MEC") voted to conduct an investigation into Obekpa's professional conduct. The MEC appointed an investigatory credentials committee of nine doctors (none of whom were members of the MEC) to review 25 of Obekpa's patient charts and to notify Obekpa of the investigation. Obekpa was advised that the investigation would focus on his documentation of patient treatment, his responsiveness to patients and their families, his responsiveness to hospital staff, and his use of hospital resources. The investigatory process was explained to Obekpa and he was advised of his right to participate and to respond.

Over the next month and a half, the credentials committee reviewed 25 of Obekpa's cases and discovered significant problems with nine of them. For example, concerning a patient who was admitted with pneumonia on April 27, Obekpa's progress notes were "pre-written with no changes at all." He failed to mention the

5

patient's lung sounds or oxygenation, to note that the patient had been restrained, to note any discussion of a treatment plan with the nursing staff, or to timely request a pulmonary consultation, which delayed the patient's length of stay for almost a week.

On August 31, the credentials committee met with Obekpa to discuss their findings. After the meeting, the committee voted to recommend limiting the number of Obekpa's patients for a period of six months, monitoring his compliance with the committee's recommendations, and having him attend additional training in medical records documentation, developing treatment plans, and the appropriate use of hospital facilities. The credentials committee sent its recommendation to the MEC, which reviewed the report prior to making its final decision on September 1. On September 2, the hospital's president and CEO, notified Obekpa of the MEC's decision to adopt the credential's committee's recommendation and advised him of his right to appeal to a hearing panel. On September 28, Obekpa requested a hearing.

A panel of medical professionals (none of whom served on the MEC or the investigatory credentials committee) conducted a three-day hearing that concluded on January 21, 2010. Obekpa was represented by counsel. Obekpa admitting during the hearing that, even after the credentials committee investigation, he had received ten more peer review referrals concerning his performance, and that he had failed to

6

respond to them in writing. The panel admitted into the record all previous letters, reports, charts, and other documents made during the course of the peer review process. It also accepted the final written statements of both the MEC and Obekpa. The panel issued its final report on March 3. In its report, the panel found that the MEC had met its evidentiary burden in support of its recommendation. The panel found that Obekpa had not shown, by a preponderance of the evidence, that the MEC's adverse recommendation was either arbitrary, capricious, or not supported by credible evidence. Although the panel unanimously adopted the MEC's conclusions, it recommended less severe corrective action in the desire to avoid negatively affecting Obekpa's career. Specifically, the panel recommended that Obekpa receive additional training, attend case review conferences, and meet daily with the hospital's risk management staff to insure compliance with hospital policies. However, Obekpa's patients referrals would not be limited and no report of the adverse decision would be sent to the data bank.

On March 12, Obekpa appealed the decision of the panel to the board. He argued that, because the panel decided to reject some of the recommendations of the MEC, it should not have found that the MEC's recommendations were supported by sufficient credible evidence and were not arbitrary or capricious. Obekpa then advised

the board that he would withdraw his appeal if the board would adopt the panel's final recommendations. Obekpa filed his written statement with the board on April 1. On April 7, the MEC informed the board that, although it stood by its recommendations, it had decided not to appeal the decision of the hearing panel and defer to the final decision of the board. On April 14, the board notified Obekpa that it had decided to adopt the original recommendations of the MEC. The board also decided to reject Obekpa's application for reappointment to the hospital staff, effective May 11. The board notified Obekpa of his limited right to appeal the denial of his reappointment application. On June 14, the board conducted a hearing concerning Obekpa's application. Obekpa, recognizing that the hospital bylaws permitted the board to determine the hospital's final action, nevertheless asked the board to defer to the hearing panel's recommendations, repeatedly stating that "the hearing panel got it right." Obekpa's attorney conceded that the peer review process was fair, that the process had worked as it was intended, and that any unfairness that may have happened prior to the panel's hearing had been rectified. Counsel also stressed that he was not challenging the fairness, the findings, or the recommendations of the hearing panel, but questioning the board's "unfettered discretion to ignore" the panel's recommendations.

On June 16, the board notified Obekpa of its final decision. It affirmed its previous decision to deny Obekpa's reappointment to the hospital staff, explaining that the decision was based upon the findings of both the MEC and the hearing panel. The board stated that it had declined to adopt the panel's recommendations because, despite efforts at collegial intervention and several levels of formal review over many months, Obekpa's professional conduct had failed to improve. The board explained:

> [I]n particular, you were not responsive to patients, you inappropriately utilized the ICU, you delayed seeing patients, delayed patient discharges and delayed ordering care. Moreover, you contributed little to the management of your patients, often depending almost exclusively on consultants instead. Furthermore, there was inadequate documentation of your care, including progress notes of little clinical value, illegible progress notes, preprinted progress notes, missing daily assessments, and missing or unclear treatment plans. These concerns go to the very core of patient care.

Consequently, the board rejected the panel's recommendations, concluding that it was unwise to expend hospital resources retraining a physician who had been out of medical school for over 12 years.

Obekpa's complaint for equitable relief in the superior court seeks essentially the same relief that Obekpa sought before the board, that is, to have the

9

recommendation of the panel confirmed as the final action in his case. As previously explained, however, absent a finding of malice in the peer review process, the superior court lacks the authority to grant Obekpa the equitable relief he seeks, because the hospital is immune from civil liability pursuant to OCGA § 31-7-132 (a). The superior court, in denying the hospital's motion for summary judgment, found that the record revealed two facts from which a jury could infer malice:

> First, Dr. [Dretler] was a part of the committee that did the initial peer review of Dr. Obekpa's cases and, surprisingly, Dr. [Dretler] was also the head of the investigation of Dr. Obekpa. Additionally, there is evidence that Dr. [Dretler] somehow may have influenced the decision to affect [Obekpa's] privileges at the hospital by limiting how many patients [Obekpa's] could consult prior to having a full hearing on the issues.

We have reviewed the record before us and found no evidence to support an inference that Dretler, who was but one of the nine doctors on the investigatory credentials committee who reported to the MEC (of which he was not a member) was responsible for limiting Obekpa's referrals. In fact, Obekpa's appellate brief is entirely devoid of any record citations supporting these allegations of malice. In any event, the credentials committee's recommendation concerning limiting Obekpa's referrals was never imposed because Obekpa appealed that decision. At no time during the course

10

of the entire peer review process did Obekpa note any concern with Dretler or the credentials committee's role in conducting the investigation. And, as noted above, Obekpa conceded that, assuming there was any unfairness in the initial phases of the peer review process, such unfairness was cured by a fair hearing before the panel, a panel that he contends "got it right."

Given the record in this case, we must conclude that the superior court erred in finding that there was evidence from which the jury could infer that the peer review process was motivated by malice. Therefore, the hospital is entitled to immunity from Obekpa's equitable claims. OCGA § 31-7-132 (a); *Taylor v. Kennestone Hosp.,* 266 Ga. App. at 21-22 (4) (a). Consequently, we reverse the court's order denying the hospital's motion for summary judgment.

2. Having found the hospital immune from suit and entitled to judgment in its favor, there exists no basis upon which to sustain the court's order imposing an interlocutory injunction prohibiting the hospital from reporting its adverse decision concerning Obekpa to the data bank. See *Bailey v. Buck*, 266 Ga. 405-406 (1) (467 SE2d 554) (1996).("[T]he sole purpose for granting interlocutory injunctions is to preserve the status quo of the parties pending a final adjudication of the case.") (citations omitted.) Therefore, that portion of the court's order is hereby reversed.

11

*Judgment reversed. Phipps, P. J., and Dillard, J., concur.*