**FIFTH DIVISION
MCFADDEN, P. J.,
BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 15, 2018**

# In the Court of Appeals of Georgia

A17A1708, A17A1709. CANCEL et al. v. THE MEDICAL CENTER OF CENTRAL GEORGIA, INC. et al. (two cases).

BRANCH, Judge.

This is the third appearance of this matter before this Court. In late 2002, Louis Goolsby, M.D., the chief executive officer of The Medical Center of Central Georgia, Inc. ("the Medical Center"), and Angel Cancel, M.D., the chief executive officer of Central Georgia Anesthesia Services, Inc. ("CGAS") learned of apparent billing and medical irregularities by CGAS members working at the hospital. After an investigation and the voluntary dissolution of CGAS, the Medical Center declined to rehire four former CGAS members (including Dr. Cancel), all of whom later brought this action against three of their former colleagues ("the individual defendants") as

well as the Medical Center, its president and chief executive officer A. Donald Faulk, and Dr. Goolsby ("the hospital defendants").

In *Cancel v. Sewell*, 321 Ga. App. 523 (740 SE2d 870) (2013) ("*Cancel I*"), we affirmed the trial court's grant of summary judgment as to Dr. Cancel's claims. Id. at 530-536.[1] In *Sewell v. Cancel*, 331 Ga. App. 687 (771 SE2d 388) (2015) ("*Cancel II*"), we reversed the denial of summary judgment to the individual defendants as to the remaining plaintiffs' claims for breach of fiduciary duty and fraud. Id. at 689-695 (2), (3). In the same decision, we vacated the trial court's denial of summary judgment and remanded with direction that the trial court "clarify" whether the hospital defendants were immune from prosecution because they had relied on a peer review panel in reaching their decision to terminate CGAS and not to rehire plaintiffs. Id. at 698 (4). On remand from *Cancel II*, the trial court held that the Medical Center had indeed relied on a peer review panel in reaching its decision to terminate CGAS and held the hospital defendants immune from plaintiffs' claims. On appeal from that judgment in Case No. A17A1708, the remaining plaintiffs assert that the trial court

---

[1] In *Cancel I,* we also dismissed the hospital defendants' cross-appeals as to orders denying summary judgment that were filed after plaintiffs' notice of appeal. 321 Ga. App. at 535-538. The Supreme Court of Georgia reversed this dismissal and remanded the case to this Court. *Sewell v. Cancel*, 295 Ga. 235, 238-240 (759 SE2d 485) (2014).

erred in this and other holdings. In Case A17A1709, plaintiffs argue that the trial court erred in denying their motion to supplement the record on appeal. We find no error and affirm in both cases.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Although we thus view the record in a light favorable to plaintiffs, the relevant facts are not in dispute. In 2000, CGAS entered into a contract to provide the Medical Center with all of its anesthesia services. In the fall of 2002, Dr. Cancel and Dr. Goolsby became aware of potentially fraudulent medical chart documentation by some CGAS members. See *Cancel I*, 321 Ga. App. at 524. Dr. Cancel also became aware of nurses' complaints that anesthesiologists were sometimes absent from surgeries and other procedures for which those doctors were medically responsible. As a result of these allegations of billing and medical improprieties, CGAS sought an

3

evaluation by the American Society of Anesthesiologists (ASA), but Dr. Goolsby, then the Medical Center's vice president for medical affairs, cancelled a scheduled ASA visit without notifying Dr. Cancel. See *Cancel I*, 321 Ga. App. at 525. The Medical Center then retained Ann Atkinson, a psychological consultant, who interviewed the hospital staff and the CGAS physicians by phone in "listening sessions" held in December 2002 and January 2003. The notes to these sessions, which were produced during discovery, show that Atkinson spoke with all 14 anesthesiologists in nearly 15 hours of conversation and with 41 of 43 nurses in over 11 hours of conversation. On the basis of these sessions, Atkinson concluded that CGAS was suffering from acute dysfunction, including power struggles, threats, "lack of trust," and allegations of sexual misconduct.[2]

Shortly before a meeting with Atkinson in early 2003, Dr. Pravin Jain, another CGAS anesthesiologist, showed Dr. Goolsby examples of what Dr. Jain considered to be improper medical chart documentation. Over the next three months, Dr. Jain also uncovered billing irregularities by CGAS members. See *Cancel I*, 321 Ga. App. at 525-526. On April 25, 2003, after receiving Dr. Jain's allegations, and without

---

[2] According to Atkinson's notes of the conversations, for example, some group members reported that one doctor was having an affair with one of the other doctors and that used condoms and pornographic materials had been found in his office.

further review of CGAS's billing records, Faulk notified CGAS in writing that the group's contract would be terminated "for cause" as of May 31, 2003, "unless CGAS can demonstrate by such date that it is in substantial compliance" with its contract with the Medical Center. Faulk's letter also represented that the Medical Center "cannot guarantee that any current member of CGAS . . . will be offered a contract of employment within the restructured Department of Anesthesiology," that applications for rehiring "will and must be evaluated carefully in light of the serious concerns that have arisen in regard to CGAS," and that the Medical Center "commits to evaluate every application . . . fairly, objectively, and on its individual merits." See *Cancel I*, 321 Ga. App. at 526.

In early May 2003, and after consultation with counsel, the officers of CGAS voted unanimously to terminate its contract with the Medical Center, with the termination effective on August 31, 2003, "so as to avoid earlier termination for cause," with all physician contracts with CGAS to terminate at the same time. *Cancel II*, 331 Ga. App. at 691. Also in May 2003, the Medical Center formed a panel with members including Faulk, Dr. Goolsby, another senior CGAS anesthesiologist, Atkinson, and a nurse ("the Goolsby panel"), which was charged with evaluating the applications of any CGAS members seeking a position in the restructured department.

On June 2, 2003, after an audit conducted off-site and limited to "medical direction review," the Medical Center notified CGAS that in light of the panel's evaluation, eight CGAS members, including individual defendants Alvin Sewell, M.D., Sanjiwan Tarabadkar, M.D., and Miles McDonald, M.D., would be offered positions at the hospital.

In August 2005, the four physicians not re-hired by the Medical Center — Drs. Cancel and Jain, as well as Grace Duque-Dizon, M.D. and Monahja Sanjeev, M.D. — brought this action against the Medical Center, the individual defendants, and the hospital defendants for breach of fiduciary duty, fraud, and other claims. See *Cancel I*, 321 Ga. App. at 523, 527-528. Years later, in *Cancel II*, this Court affirmed the trial court's grant of summary judgment to the individual defendants because plaintiffs had not produced any evidence that any of the individual defendants had "breached a fiduciary duty in connection with the termination of CGAS's contract with the Medical Center" or made any "false misrepresentation" to plaintiffs. *Cancel II*, 331 Ga. App. at 692 (2), 694 (3). In the same decision, we affirmed the denial of summary judgment as to the hospital defendants because the evidence before the trial court "[did] not establish that the [Goolsby] panel, even if a peer review committee, was evaluating the quality and efficiency of actual medical care services."Id. at 697 (4)

6

(a). We also noted, however, that the trial court had appointed a special master "to make recommendations upon discovery matters," including whether the Medical Center was required to produce "certain documents" or whether those documents were "protected by the peer review privilege" codified at OCGA § 31-7-133. Id. at 697-698 (4) (b). We therefore remanded the case

> so that the trial court may clarify whether its orders adopting the special master's discovery recommendations further determined that, for purposes of immunity under OCGA § 31-7-132 (a), the [Goolsby] panel was a peer review committee that was evaluating the quality and efficiency of actual medical care services.

*Cancel II*, 331 Ga. App. at 698 (4) (b) (footnote omitted), citing *Hosp. Auth. of Lowndes County v. Meeks*, 285 Ga. 521, 523 (678 SE2d 71) (2009).

On April 30, 2015, after the return of the remittitur in *Cancel II*, the trial court entered an order holding that "[b]ased upon the special master's analysis and conclusion that the [Goolsby] panel was a review organization conducting peer review functions," as well as the trial court's "earlier adoption of the special master's recommendation," the court was "again adopt[ing] the findings of the special master that the panel was in fact a review organization conducting peer review functions[.]" The trial court thus concluded that the hospital defendants were entitled to immunity

7

under OCGA § 31-7-132 (a). After plaintiffs moved for reconsideration of the April 30 order, the trial court held a hearing on June 17 as to the scope of the special master's findings. One issue at that hearing was whether the hospital defendants had acted with malice in terminating and not re-hiring plaintiffs such that the hospital defendants could not claim the benefit of immunity. In the course of the hearing, the trial court noted that because the issue of malice "may be one of several issues" remaining for determination, "a motion needs to come forward as it relates to this issue so that we can decide that before we proceed." Plaintiffs did not object to this procedure. After the hearing, the trial court denied the motion for reconsideration.

In a new motion for summary judgment, filed on June 30, 2015, the hospital defendants cited evidence including Dr. Goolsby's deposition testimony, as well as statements in plaintiffs' own brief in *Cancel II*, and argued that plaintiffs had not adduced any evidence of malice. Plaintiffs filed a 68-page response, including accounts of the 2002-2003 allegations, Atkinson's activities prior to the formation of the Goolsby panel, and the panel's decision not to rehire plaintiffs, with 500 pages of exhibits.

On August 21, 2015, the trial court entered an order granting the hospital defendants' new motion, finding that the law-of-the-case rule did not prevent it from

8

revisiting the peer review issue. The trial court also held that plaintiffs were not authorized to obtain further discovery of Atkinson's sessions of December 2002 and January 2003 because "that information was privileged under the peer review statute" and that plaintiffs were not authorized to "use the lack of evidence in the record to draw an inference of malice" against the hospital defendants, with the result that the hospital defendants were entitled to immunity under OCGA § 31-7-132 (a). On September 17, 2015, plaintiffs filed a notice of appeal from this judgment.

On November 5, 2015, plaintiffs filed a motion to supplement the record on appeal with three documents not previously filed below: a February 2011 email from the initial judge on the case (now retired) to the parties suggesting that a jury issue existed on the question whether any of the hospital records had been falsified; this Court's April 2013 order denying plaintiffs' motion for reconsideration in *Cancel I*; and an April 2015 email from the court clerk notifying the parties that the case had been reassigned to a new judge. After the hospital defendants filed a response, the trial court denied the motion to supplement.[3] On September 13, 2016, plaintiffs filed

---

[3] A problem with service caused the trial court to reenter the order denying the motion to supplement on August 18, 2016.

9

their notice of appeal from this order, and we consolidated the cases for purposes of appeal.

Case No. A17A1708

On appeal from the trial court's grant of summary judgment to the hospital defendants, plaintiffs argue that the trial court erred when it concluded that the hospital defendants were entitled to immunity under OCGA § 31-7-132 (a).[4] Plaintiffs also argue that questions of material fact remain on their claims for fraud, breach of fiduciary duty, and tortious interference.

1. As to the trial court's grant of summary judgment to the hospital defendants on the ground of immunity, plaintiffs first argue that (a) the trial court's grant of summary judgment is inconsistent with this Court's holding in *Cancel II*; (b) plaintiffs have been improperly barred from further discovery as to Atkinson's listening sessions and the Goolsby panel's decisionmaking process; and (c) a jury question remains on the issue of the hospital defendants' malice, and thus their

---

[4] OCGA § 31-7-132 (a) provides that "[n]o professional health care provider nor any individual who serves as a member or employee of a professional health care provider or review organization nor any individual who furnishes counsel or services to a professional health care provider or review organization shall be held, by reason of the performance of peer review activities, to have violated any criminal law or to be civilly liable under any law *unless he was motivated by malice* toward any person affected by such activity." (Emphasis supplied.)

10

entitlement to immunity under OCGA § 31-7-132 (a). We disagree with these contentions.

(a) We begin by noting that although two of the three judges participating in *Cancel II* concurred only in the judgment of Division 4, which contained the remand instructions excerpted above, neither plaintiffs nor defendants appealed our ruling to the Supreme Court of Georgia. As a result, the remand instructions remain physical precedent, binding the parties and this Court in these later proceedings as law of the case.

OCGA § 9-11-60 (h) provides that "[a]ny ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." The only exception to this statutory expression of Georgia's law-of-the-case rule is that a previous appellate decision does not bind subsequent proceedings when the "evidentiary posture" of a case has changed between appeals, as when "a new issue that the appellate court has not addressed is raised by amended pleadings or otherwise," or when "the original evidence submitted is found to be insufficient, and the deficient evidence is later supplemented." *Choate Constr. Co. v. Auto-Owners Ins. Co.*, 335 Ga. App. 331, 336-337 (1) (779 SE2d 465) (2015).

11

Although Division 4 (a) of *Cancel II* held that "[t]he evidence cited [there] does not establish that the [Goolsby] panel, even if a peer review committee, was evaluating the quality and efficiency of 'actual medical care services,'" 331 Ga. App. at 697 (4) (a), the same decision ordered the trial court to "clarify" whether its prior orders "determined that, for purposes of immunity under OCGA § 31-7-132 (a), the panel was a peer review committee that was evaluating the quality and efficiency of actual medical care services." Id. at 698 (4) (b).[5] On remand, the trial court confirmed its earlier ruling that the Goolsby panel was acting as a peer review committee for purposes of immunity. The trial court also requested that the hospital defendants file a new motion for summary judgment with emphasis on the question whether any of the hospital defendants were acting with malice in the course of their participation in the Goolsby panel. After the hospital defendants filed their new motion and plaintiffs filed a lengthy response, the trial court concluded that plaintiffs had not introduced any evidence of such malice. Because we had specifically asked the trial court to make a new finding on the question of the Goolsby panel's status and activities, the judgment at issue was the result of a new motion for summary judgment, and the issue

---

[5] If it were true, as plaintiffs argue, that our decision in *Cancel II* settled the issue whether the Goolsby panel had evaluated "the quality and efficiency of actual medical care services" against defendants, remand would have been futile.

of malice as an exception to immunity for peer review activities was not addressed in our earlier ruling, we conclude that the evidentiary posture of this case has changed such that our holding in Division 4 (a) of *Cancel II* has been superseded. See 331 Ga. App. at 696-698 (4).[6]

(b) Plaintiffs also assert that the trial court erred when it denied further discovery as to the notes of Atkinson's "listening sessions" because those notes were taken before the Goolsby panel was formed. This contention is belied by both the record and the law.

OCGA § 31-7-133 provides:

(a) Except in proceedings alleging violation of this article, the *proceedings and records of a review organization* shall be held in confidence and *shall not be subject to discovery or introduction into evidence in any civil action*; and no person who was in attendance at a meeting of such organization shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings or activities of such organization or as

---

[6] Although we noted in *Cancel II* that "the trial court repeatedly indicated at the summary judgment hearing that there was evidence from which a jury could find malice," 331 Ga. App. at 698, (4) (b), n. 52, those indications were superseded by the trial court's "summary order," which was vacated in turn by our decision. Id. at 698-699 (4).

13

to any findings, recommendations, evaluations, opinions, or other actions of such organization or any members thereof.

Thus "there is, by statute, no discovery relative to medical or peer review proceedings." *Emory Clinic v. Houston*, 258 Ga. 434, 435-436 (3) (369 SE2d 913) (1998). As our Supreme Court has noted, however,

> While [OCGA § 31-7-133] precludes a party from discovering the proceedings and records of a peer review organization, it specifically authorizes a party to seek from original sources documents which the peer review organization examined, and to examine anyone who appeared before or was a member of the peer review organization, so long as the witness is not asked about the peer review proceedings.

*Freeman v. Piedmont Hosp*., 264 Ga. 343, 344-345 (444 SE2d 796) (1994) (citation and punctuation omitted). But

> the fact that a plaintiff seeks to avoid an immunity defense by alleging the applicability of the malice exception does not convert the action into one alleging violation of OCGA §§ 31-7-130-133 so as to provide for an exception to the confidentiality mandate. Allowing an allegation of malice to trigger the applicability of the exception to the confidentiality requirement would result in the opportunity for full discovery of peer review material in every such case.

*Id*. at 345 (citation and punctuation omitted).

14

It is undisputed that Atkinson was hired by the Medical Center and that the panel was given the results of her investigation for the purpose of assisting the panel in determining whether and which former CGAS members would be hired. The record also shows that the notes from Atkinsons' "listening sessions" with both the anesthesiologists and the nurses were provided to plaintiffs, who cross-examined Atkinson as to them at her deposition. This production is in accord with *Freeman*'s distinction between the permissible discovery of documents produced by "original sources," such as Atkinson, and the impermissible discovery of documents generated in the course of the peer review process itself. See *Freeman*, 264 Ga. at 345. Even if the trial was incorrect to suggest that the Atkinson notes were themselves not discoverable as part of the peer review process, the record shows that plaintiffs had access to those notes and had the opportunity to depose Atkinson as to them, and thus can show no harm arising from any error.

(c) Plaintiffs also assert that they have suffered harm because they "have never been told what conduct, acts, and/or omissions caused the hospital defendants to choose not to select them" for rehiring and that the decision not to rehire them was undertaken with malice.

15

On this question, OCGA § 31-7-132 (a) provides in relevant part that no professional health care provider "shall be held, by reason of the performance of peer review activities, . . . to be civilly liable under any law *unless [the provider] was motivated by malice* toward any person affected by such activity." Thus "if an organization meets the definition of review organization and is conducting peer review within the meaning of the statute, a health care provider or member of a review organization is immune from criminal or civil liability, provided the health care provider is acting without malice." *Fulton-DeKalb Hosp. Auth. v. Dawson*, 270 Ga. 376, 379 (2) (509 SE2d 28) (1998) (citation omitted); see also *DeKalb Med. Center v. Obekpa*, 315 Ga. App. 739, 743-744 (1) (728 SE2d 265) (2012) (reversing a denial of summary judgment to defendant members of a peer review committee when no evidence had been cited to authorize a reasonable inference that any of the defendants acted with malice when it limited plaintiff physician's referrals).

As a preliminary matter, we decline to conclude that for purposes of this appeal, OCGA § 31-7-132 (a) is preempted by the federal Health Care Quality Improvement Act of 1986 (HCQIA), 42 U.S.C. §11101 et seq., or that the hospital

16

defendants are not entitled to immunity thereunder.[7] The record shows that plaintiffs' motion for summary judgment subordinated its brief discussion of HCQIA to that of malice under Georgia law and concluded, many pages later, that "the immunity analysis under the Georgia peer review statute is independent of the immunity analysis under the HCQIA." The trial court did not mention preemption in its final order. The issue of preemption not having been adequately raised or ruled on below, we decline to address it here. Even if the issue had been sufficiently aired, moreover, this Court has held that "to the extent that peer review and medical review immunity under OCGA §§ 31-7-132 (a) and 31-7-141 are conditioned upon the absence of malice and deception, the statutes are preempted by the federal Act under which bias is irrelevant." *Patton v. St. Francis Hosp.*, 260 Ga. App. 202, 208 (2) (581 SE2d 551) (2003) (citations omitted). For this reason alone, the trial court would have been correct to conclude that plaintiffs had failed to establish the "malice" exception to immunity under the Georgia peer review and medical review statutes. Id. (affirming grant of summary judgment to hospital and surgeon who was a member of the peer review board that terminated plaintiff doctor's privileges at a hospital).

[7] See, e.g., *Obekpa*, 315 Ga. App. 739 at 740 (1) (affirming a grant of summary judgment on a plaintiff doctor's claim for equitable relief, but also stating in dicta that a complaint for damages "would have been governed by the [HCQIA]").

17

More fundamentally, plaintiffs have cited no evidence on appeal supporting a reasonable inference that any of the hospital defendants acted with malice when they decided not to rehire plaintiffs. Plaintiffs merely ask this Court to authorize an inference of malice from a set of circumstances including the hospital defendants' failure to investigate the nurses' complaints; Dr. Goolsby's cancellation of the ASA visit; Atkinson's hiring by Dr. Goolsby and her later participation in the Goolsby panel, including its rehiring decisions; unspecified inconsistencies between the accounts of all the defendants; and the "use of the peer review privilege" to prevent scrutiny of the decision not to rehire plaintiffs. Such arguments either reframe the requests for access to the details of the peer review process that we have just rejected in Division (1) (b) or ask this Court to supply evidence authorizing a reasonable inference of malice when no such evidence exists in the record. As to Atkinson's notes, we have already observed that she was deposed as to the circumstances under which these were produced, and plaintiffs have cited no other circumstances or statements in this record to support a reasonable inference that any of the hospital defendants were motivated by malice when they made their decision not to rehire plaintiffs. See *Obekpa*, 315 Ga. App. at 743-744 (1); *Burrowes v. Northside Hosp.*, 294 Ga. App. 472, 476 (2) (671 SE2d 176) (2008) (affirming grant of summary

18

judgment to hospital when, despite the four examples proffered by appellant, the record was "devoid of any evidence" that the hospital had "acted with malice during the peer review process"); *Taylor v. Kennestone Hosp.*, 266 Ga. App. 14, 21-22 (4) (a) (596 SE2d 179) (2004) (finding "no evidence from which a jury could reasonably infer" that defendants' decision to deny plaintiff's job reapplication "was motivated by malice").

For all these reasons, the trial court did not err when it granted summary judgment to the hospital defendants on the ground that they were entitled to immunity under OCGA § 31-7-132 (a).

2. Plaintiffs also argue that the trial court erred when it granted summary judgment on their claims against the hospital defendants for (a) tortious interference with contractual or business relations, (b) breach of fiduciary duty, and (c) fraud. We disagree.

(a) The record shows that plaintiffs' original claim for tortious interference with business relations was dismissed on April 10, 2006, for failure to state a claim under OCGA § 9-11-12 (b) (6). At that time, the trial court noted that the claim failed because plaintiffs were not strangers to the contracts or business relationships between the Medical Center and CGAS; rather, plaintiffs were "all parties to an

19

interwoven set of contracts." See *Galardi v. Steele-Inman*, 266 Ga. App. 515, 521 (3) (597 SE2d 571) (2004) ("all parties to a comprehensive interwoven set of contracts are not liable for tortious interference with any of the contracts or business relationships") (footnote omitted).

The dismissal of plaintiffs' original claim for tortious interference was "a dismissal on the merits and . . . with prejudice." *Roberson v. Northrup*, 302 Ga. App. 405, 406 (691 SE2d 547) (2010) (citation and punctuation omitted). Although plaintiffs reasserted an identical claim in their second amended complaint, filed in April 2007, this could not amount to a cure of any defect in that claim, which had already been adjudicated as meritless, and plaintiffs' assertions on this appeal as to the evidence supporting that claim have no bearing on its viability under OCGA § 9-11-12 (b) (6), which tests the legal rather than factual sufficiency of a claim. See *Infinite Energy v. Pardue*, 310 Ga. App. 355, 355-356 (1) (713 SE2d 456) (2011) ("if, within the framework of [a] complaint, evidence may be introduced which will sustain a grant of the relief sought," the complaint is legally "sufficient and a motion to dismiss should be denied") (footnote and punctuation omitted). For all these reasons, the trial court did not err when it again dismissed this claim. *Roberson*, 302 Ga. App. at 407-408 (plaintiffs who had failed to voluntarily dismiss their action prior

20

to the trial court's dismissal for failure to state a claim were not entitled to file a renewal action; "the judicial determination that dismissal is authorized causes the suit to become void and incapable of renewal") (citation omitted).

(b) In *Cancel II*, we reversed the trial court's previous denial of summary judgment as to plaintiffs' claims for breach of fiduciary duty against the individual defendants. We held that CGAS's decision to terminate its contract with the Medical Center "amounted to an exercise of [its individual members'] business judgment, based upon facts available at the time and the advice of counsel," and that plaintiffs had "failed to cite any evidence" that the individual defendants had breached any fiduciary duty "in connection with the termination of [that] contract." 331 Ga. App. at 692 (2) (footnotes omitted).

The only argument now asserted by plaintiffs distinctive to the hospital defendants, rather than the individual defendants, is that the Medical Center violated its fiduciary duty when it falsely promised to consider each application for rehiring "fairly, objectively, and on its individual merits." This argument fails for two reasons. First, the relation between the Medical Center and plaintiffs was established by the negotiated contract for services entered into by the Center and CGAS, and plaintiffs have pointed to no evidence suggesting that a fiduciary relationship existed between

21

the Medical Center and any individual member of CGAS. See OCGA § 23-2-58 (a fiduciary duty arises in the context of a contractual relationship only "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith"). Second, to the extent plaintiffs argue that the Medical Center breached a fiduciary duty owed to plaintiffs in relying on the Gooslby panel's peer review activities, they seek to invade the province of the peer review process, which we reject for the reasons given in Division 1 (b) above.

(c) In *Cancel II*, we reversed the denial of summary judgment to the individual defendants on plaintiffs' fraud claims on the following basis:

> [T]he record shows that when the plaintiffs signed their respective employment agreements with CGAS, they each also executed a resignation document that was held in escrow by CGAS, in which they expressly relinquished upon termination 'all due process rights' under The Medical Center's bylaws. The employment agreements provided that the resignation documents would be tendered to The Medical Center upon termination of the physicians' employment for any reason. As such, plaintiffs were aware of these ramifications when they voted to terminate CGAS's contract with The Medical Center. Because the plaintiffs failed to adduce evidence of any false representation made to them by [the individual defendants, they] were entitled to summary judgment on the claims of fraud.

331 Ga. App. at 694 (3) (footnotes omitted).

As to the survival of their fraud claim against the hospital defendants, plaintiffs assert that Faulk's April 2003 letter "made false representations designed to trigger the vote to terminate" CGAS's contract with the Medical Center, but do not specify which statements in that letter were false. To the extent plaintiffs assert that the Medical Center disguised Atkinson's planned or actual function on the Goolsby panel, moreover, we have seen nothing in the record amounting to a false representation on this subject. Further, and to the extent plaintiffs allege that the Medical Center did not consider each plaintiff's application for rehiring "fairly, objectively, and on its individual merits," the same April 2003 letter also stated that the Center "cannot guarantee that any current member of CGAS . . . will be offered a contract of employment with the restructured Department of Anesthesiology." Because plaintiffs have not pointed to any evidence tending to show that these statements were false misrepresentations, we affirm the trial court's grant of summary judgment as to plaintiffs' fraud claims against the hospital defendants.

Case A17A1709

3. In the companion appeal, plaintiffs assert that the trial court erred when it denied their motion to supplement the record with emails from the former judge, the clerk of the trial court, and our own order in *Cancel I*. We disagree.

23

OCGA § 5-6-41 (f) provides: "Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth." But "[e]vidence never actually admitted at trial cannot properly become a part of the record on appeal pursuant to OCGA § 5-6-41 (f)." *Harp v. State*, 204 Ga. App. 527, 527 (1) (420 SE2d 6) (1992) (citations omitted). "[A]ny issue as to the correctness of the record is to be resolved by the trial court," which "retains jurisdiction" to supplement the record, and which remains "the final arbiter of any difference in the preparation of the record." Id. at 528 (1) (citation omitted).

This trial court found "no evidence" that the exclusion of the emails from the record below "was a mistake or oversight by the parties or the court," and also found that inclusion of the documents was not necessary in order to make the record "speak [ ] the truth." We have reviewed the documents at issue, and are required to defer to the trial court's factual determination as to them. *Harp*, 204 Ga. App. at 527 (1) (denying appellant's motion to supplement the record on appeal).

*Judgments affirmed. McFadden, P. J., and Bethel, J., concur*.